Rockingham, }
  Dec., 1898. }

COSTELLO *v.* PORTSMOUTH BREWING CO.

A by-law of a corporation providing that the indebtedness of a stockholder thereto may be considered a lien on the shares standing in his name, and giving the directors the option of cancelling such shares to the extent of the indebtedness and crediting their par value on the account, when such indebtedness shall have existed for three months and after demand and refusal, is binding upon a stockholder who is chargeable with knowledge of its existence.

ASSUMPSIT, to recover dividends declared between August 13, 1878, and the date of the writ, December 24, 1897, upon four

shares of the defendants' capital stock. Pleas, the general issue and the statute of. limitations. The defendants also filed a bill in equity alleging that they cancelled the plaintiff's stock, August 13, 1878, and gave him credit for its par value upon his indebtedness to them, in accordance with authority contained in their by-laws, and that if their action in this respect was illegal, the plaintiff, by acquiescence and laches and by the operation of the statute of limitations, has lost his right to object; and praying for a surrender and cancellation of the certificate. Facts agreed.

The defendants were incorporated under the general law of the state in December, 1875, " for the purpose of manufacturing, brewing, and exporting from the state of New Hampshire, for lawful sale and consumption, beer, ale, and other malt liquors by whatever name called, and for making malt, casks, and barrels, and carrying on all other lawful business connected therewith." Their place of business is Portsmouth in this county; and a portion of their business is the illegal sale of malt liquors. Their capital stock is divided into shares of the par value of $500, of which the plaintiff was the owner of four shares, July 1, 1876, and is still, unless he has lost his right to them by the acts of the defendants or by his own acquiescence therein and laches, or by the operation of the statute of limitations. His certificate of stock states that the shares are " not transferable except in accordance with the company's by-laws." At a meeting of stockholders held November 21, 1876, of which the plaintiff had notice and at which he was chosen a director, the following by-laws were adopted: " Any stockholder owing money to the corporation, whether for ale, barrels, or any other cause, shall not have the right to sell or transfer his share or shares till such liability is discharged, and the corporation by its directors shall have the right to consider such indebtedness as a lien on any share or shares standing in the name of such stockholder on the books of the corporation, and shall refuse to transfer it or them to the name of any other party till such indebtedness is paid. The corporation by its directors shall have the option of cancelling the share or shares of any stockholder to the extent of the indebtedness due by said stockholder to the corporation and placing the amount, at the rate of five hundred dollars for every share so cancelled, to his credit on his account: *Provided*, however, that said indebtedness shall have been due for at least three months, that payment shall have been demanded and refused, and that the vote to cancel such share or shares shall have been passed by at least two thirds of the directors at some regular meeting." The by-laws were printed and distributed to the stockholders soon after December 5, 1876, in accordance with a vote of the directors at a meeting holden on that day, at which the plaintiff was present.

The defendants sold ale, beer, and porter of their own manufacture to the plaintiff, delivering them in the original packages to a common carrier at Portsmouth, which transported them to the plaintiff at Boston, Massachusetts, where they were sold by him without violation of local law.  The plaintiff became indebted to the defendants in this way, and during all the time between January 1, 1877, and August 13, 1878, was owing them $2,500 and more, and on the latter date, $3,262.60.  The amount due was demanded of him by the defendants in February, 1878, and again prior to August 13, 1878.  At a regular meeting of the directors held on the last named day, at which five of the seven directors were present,— the plaintiff and one other being absent,— the following action was unanimously taken: "*Voted,* that Mr. Costello's four shares of capital stock be cancelled and become the company's property from this date, and the amount of two thousand dollars be placed to his credit on account"; and "that the treasurer be and is hereby authorized to sell the four shares of stock formerly owned by J. H. Costello to some person or persons who he may consider will be a benefit to the company."  On the next day the defendants credited the plaintiff with $2,000 upon his account for this stock.  The corporation was solvent at the time, and its stock was worth no more than par.  A monthly statement rendered by the defendants to the plaintiff, September 1, 1878, in accordance with their custom, showed the credit of the $2,000 for the stock and a balance of $1,215.62 still due.  Between this date and May 25, 1883, the defendants rendered statements to the plaintiff monthly, all based upon the balance after the credit aforesaid.

The plaintiff retained the certificate for the four shares of stock until it was impounded in this action.  The defendants have not recognized him as a stockholder since August 13, 1878.  They reissued the shares, January 14, 1880, and have paid dividends to, and otherwise recognized as owners, the persons since holding them.  The plaintiff appeared at a directors' meeting held in 1884, and at one or two previous meetings, and demanded payment of the dividends upon the stock, which was refused on the ground that he was not a stockholder; he also made a number of other demands subsequently, but none after January, 1887.  He brought an action to recover the dividends in January, 1885, which, after appearance by the defendants, was entered neither party,— the defendants paying nothing to the plaintiff.

The questions arising upon these facts were reserved.

*Clarence Hale* and *Arthur F. Belcher* (both of Maine), and *Calvin Page,* for the plaintiff.

*Samuel W. Emery,* for the defendants.

CHASE, J. It is important to bear in mind that this is a suit between a stockholder and the corporation. The question before the court is not complicated by the intervention of rights of third persons. It is, what, if any, force did the by-laws have, as between the stockholder himself and the corporation. It appears that the plaintiff was a stockholder at the time of the adoption of the by-laws and had been one since the preceding July, if not from the time of the creation of the corporation. He was chosen a director at the stockholders' meeting at which the by-laws were adopted, and soon afterward took part in a directors' meeting at which measures were taken to print them and distribute them to the stockholders. His certificate of stock provides that the shares named in it are " not transferable except in accordance with the company's by-laws." In view of these facts, it cannot be doubted that he knew of the provisions under consideration. It does not appear that he objected to them. By them, the stockholders in effect agreed among themselves that the corporation should have a lien upon the shares of a stockholder for his indebtedness to the corporation, and his right to sell and transfer the shares should be subject to this lien; and that the corporation, by a two thirds vote of its directors at a regular meeting, might apply the shares at the rate of $500 each to the payment of the debt, after it had been due for three months and payment had been demanded and refused. The stockholders were mutually benefited by this agreement. It tended to protect the property, of which they were beneficiaries, from loss. No reason is apparent why these by-laws were not valid as between the stockholders. Each stockholder had a right to pledge his stock for his debts. His property in the stock would be incomplete without such privilege. The statutes of the state authorized the corporation to take security by mortgage, pledge, or attachment of any property, real or personal, for the payment of debts due to the corporation. G. S., c. 133, ss. 6, 7. The stock of the corporation was property (*Scripture* v. *Soapstone Co.*, 50 N. H. 571, 585), and it was not excepted from this authority. In the case cited and in *Buttrick* v. *Railroad*, 62 N. H. 413, there were attachments by a corporation of shares in its stock owned by its debtor. The by-laws rendered a formal assignment of the stock unnecessary. They performed that office themselves. If a lien arose under them, the fact would necessarily be known to the stockholder and the corporation, and as to them, the policy of the law by which secret liens are regarded with disfavor would not apply. The by-laws and the acts of the parties constituting a contract, the transaction would not be within the prohibition of the statute against restraint upon the free sale of shares of corporate stock. G. S., c. 134, s. 13; Thomp. Corp., s. 1031. Indeed, if the

stockholder were not allowed to make such a contract, he would be under restraint in respect to the sale of his shares. *Hill* v. *Pine River Bank*, 45 N. H. 300, 309.

When the plaintiff obtained credit from the defendants, it must have been upon the terms prescribed by these by-laws. The minds of the parties (the corporation acting by its stockholders) met in regard to the matter, resulting in a contract by which the defendants acquired a valid lien upon the plaintiff's shares of stock to secure his indebtedness. 1 Mor. Corp., *s.* 201, *et seq.;* Beach Pr. Corp., *s.* 644; Thomp. Corp., *ss.* 1032, 2321; Cook Stock & Stockh., *s.* 522, *et seq.; Jennings* v. *Bank of California,* 79 Cal. 323; *Vansands* v. *Middlesex County Bank*, 26 Conn. 144; *Hill* v. *Pine River Bank*, 45 N. H. 300, 309. On August 13, 1878, the indebtedness being due and its payment having been refused (neglect being equivalent to refusal) although demanded nearly or quite six months before, the directors at a regular meeting took the steps required by the terms of the contract to apply the stock toward the payment of the indebtedness. Five of them — two thirds of the whole number — voted to cancel the stock and credit the plaintiff with its par value. The credit was made accordingly, and the plaintiff was informed of it the first of the following month. This fulfilled all the requirements of the contract in order to transfer the title to the defendants. By the transaction the plaintiff received the full value of his stock, and the defendants received payment of an equal amount of the plaintiff's debt. The transfer necessarily operated as a cancellation of the stock for the time being; for while the stock was in the corporation's possession it was not available for voting or dividend purposes. But the corporation, being solvent, could complete its authorized capital by reissuing the stock at any time. *Currier* v. *Slate Co.*, 56 N. H. 262, 268. The directors provided for this when they cancelled the stock; and the shares were reissued and presumably sold, January 14, 1880, which was within two years after the corporation's title to them had been perfected. This was a compliance with the direction of the statute on the subject. G. S., *c.* 133, *s.* 7. The plaintiff's neglect for nearly nineteen years to assert a title to the shares by beginning and effectually prosecuting legal proceedings for the purpose is well-nigh conclusive evidence of his acquiescence in the adverse title thus created. But however this may be, by his contract with the defendants, they acquired first an equitable lien upon the stock and then, by pursuing the course prescribed by the contract, an absolute title. By the loss of his title the plaintiff lost the right to the dividends incident to the stock.

This view of the case renders it unnecessary to consider whether the indebtedness of the plaintiff to the defendants for

malt liquors sold as these were, or the indebtedness of the defendants to the plaintiff for dividends arising from an illegal business, can be enforced by legal proceedings. The law will not undo executed contracts because they are tainted with illegality, at the suit of a party who is responsible equally with the opposing party for the illegality.

*Case discharged.*

All concurred.