Thomas Searles *vs.* Bar Harbor Banking & Trust Co.

Hancock.     Opinion March 12, 1929.

*H. L. Graham,* for plaintiff.
*Lyman & Rodick,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, BARNES, BASSETT, PATTAN-
GALL, JJ. DUNN, J., concurring in the result.

WILSON, C. J.   A bill in equity brought, as the prayers set forth, to declare a by-law of the defendant company invalid and that the defendant be required to issue to the plaintiff stock free of any of the restrictions against free alienation imposed by the by-law.

The case is reported to this court on an agreed statement of facts.

The defendant is a Trust Company organized under a special charter granted by the legislature in 1887. On March 14, 1927, its capital stock was $100,000, its surplus $300,000 with undivided profits of $214,973.49. On the above date, the plaintiff was the owner of ten shares of the capital stock.

With a view of distributing its stock among a larger number of holders, it obtained from the legislature in 1927, Chap. 126 of the Private and Special Laws, an amendment to its charter under which it was authorized to increase its capital stock and determine the terms and manner of its disposition.

However, before this act went into effect on July 15, 1927, the officers of the bank proposed to its stockholders that the capital stock be increased to $200,000, as it has the power to do under its original charter, Sec. 2, Chap. 196, P. & S. Laws, 1887, and that 1,000 shares be issued to the stockholders in proportion to their holding and against the undivided profits.

A meeting of the stockholders was duly called on April 11, 1927, the call for which included only notice of a proposed increase in capital stock to $200,000. This meeting was continued to July 11 and a call for another meeting to be held on the same date was duly issued to act on a proposed change in the by-laws, restricting the alienation of the new stock under certain conditions.

The plaintiff executed a proxy to attend the meeting called for April 11 to vote on the increase in the capital stock, but did not

execute a proxy for the meeting called for July 11 to vote on the change in the by-laws.

On July 9, however, he wrote to the Treasurer of the defendant company, protesting against the proposed change in the by-laws, but did not attend the meeting or authorize any person to attend and vote his stock against the adoption of the proposed by-law.

At the meeting held on July 11, 1927, it was voted to increase the stock as proposed in the call for the meeting and that the new shares be issued to the old stockholders in proportion to their present holdings and charged to undivided profits, it being in the nature of a stock dividend; and also to adopt the following by-law restricting the alienation of the new stock when coming into the hands of any person by will, inheritance, or by a conveyance to take effect after death:

"Any person acquiring through will, or descent, or by conveyance to take effect at death, any stock of this corporation issued after the passage of this by-law shall be bound to offer the same for sale and transfer to any party appointed by the Trust Company Directors at a fair value of such stock as determined by said Directors, or if said value is not satisfactory to the estate; at the fair value of said stock as determined by three appraisers, one to be chosen by the estate, one chosen by the Directors and one chosen by those two, but any and all appraisers must be chosen from and be when chosen, stockholders in said Trust Company.

"Such obligation shall continue thirty days and no longer after such holder shall offer his stock for sale as above. If any such holder shall fail or refuse to sell and transfer his stock acquired as aforesaid at its fair value thus determined, no dividend shall be thereafter due or paid upon such stock until it shall be so offered for sale. Such stock shall have no right to vote until so offered. The passage of this by-law is to keep the stock, so far as may be, in the hands of persons whose patronage or influence may be helpful to the bank."

Certificates for 968 shares of the new stock were issued and accepted subject to the restrictions by nearly one hundred stockholders, and a certificate for ten shares was issued to the plaintiff August 24, 1927, with the above by-law printed on the back. The plaintiff on September 1 following returned it to the defendant

company, but not with an absolute refusal to accept, but "pending the determination of the right of the Trust Company to restrict the free transfer of the stock."

On January 1, 1928, the regular dividend was declared on all the outstanding stock of the company, including the new shares issued to the plaintiff as his share of the stock dividend; a check was sent to the plaintiff covering his dividend on both his former holdings and the ten shares to which he was entitled as a stock dividend, which check he accepted and cashed without protest so far as the record shows.

No action was taken by the plaintiff to determine his rights until March 20, 1928, when this bill was brought. In the meantime not only all of the new stock, excepting thirty-two shares, had been issued and accepted by the persons entitled thereto without protest, but several transfers of the new stock by and to parties accepting it were recorded on the books of the company.

Of the Bank's authority to declare the stock dividend there is no question in the absence of any statute prohibiting it; In re *Heaton*, 89 Vt., 550; Fletcher Cyc. of Corporations, Vol. 6, Sec. 3682; *Gen. Invest. Co.* v. *Beth. Steel Corp.*, 87 N. J. Eq., 234, and is not questioned by the plaintiff.

It is contended by the plaintiff, however, that such a by-law was not within the power of the defendant company to adopt, that it is contrary to public policy inasmuch as it constitutes a restraint upon the free alienation of his property and is, therefore, void.

There is a seeming lack of harmony among the authorities on the question involved. As a general rule, the cases holding invalid by-laws restricting the alienation of stock are cases where alienation is made dependent on the consent of all the other stockholders or the Board of Directors or some official of the company: In re *Klaus*, 67 Wis., 401; *Miller* v. *Farmers Milling & El. Co.*, 78 Neb., 441; *Chouteau Spring Co.* v. *Harris*, 20 Mo., 383; *Bank of Atchison Co.* v. *Durfee*, 118 Mo., 431; *McNulta* v. *Corn Belt Bank*, 164 Ill., 429, 447; *Bloede* v. *Bloede*, 84 Md., 129; or such restriction is held invalid by reason of lack of legislative authority to pass such a by-law. *Ireland* v. *Globe Milling & Reduction Co.*, 19 R. I., 181; 21 R. I., 9; *Feckheimer* v. *Nat. Ex. Bk.*, 79 Va., 80, 83.

The cases in which a limited restriction upon alienation of stock

issued after the passage of the by-law have been upheld have been either under by-laws adopted under legislative authority and providing only for an option to the corporation or other stockholders to purchase for a limited period, *Nicholson* v. *Brewing Co.*, 82 Ohio St., 94; *Chaffee* v. *Farmers Co-op. Elevator Co.*, 39 No. Dak., 585; *Sterling Co.* v. *Litel*, 75 Colo., 34; or where even without express legislative authority to enact, the acceptance of stock issued in pursuance of such a by-law is held to constitute an enforceable contract between the corporation and a stockholder if the by-law is reasonable and its purpose the promotion of the purposes of the corporation. *New England Trust Co.* v. *Abbott*, 162 Mass., 148; *Barrett* v. *King*, 181 Mass., 476; *Longyear* v. *Hardman*, 219 Mass., 405; *Weiland* v. *Hogan*, 177 Mich., 626; *Farmers M. & S. Co.* v. *Laun*, 146 Wis., 252; *Baumohl* v. *Goldstein*, Vol. N. J. Eq., 124 Atl., 118; *The Model Clothing House* v. *Dickinson*, 146 Minn., 367; *Blue Mt. Forest Asso.* v. *Borrowe*, 71 N. H., 69; also see *Sterling* v. *Litel*, supra.

Additional authorities pro and con may be found in R. C. L., 262-3; 14 Cyc., 668; Fletcher Cyc. of Corporations, Vol. 1, Sec. 513, Vol. 6, Secs. 376-2.

The by-law in this case is not objectionable on the ground that it imposes an absolute restriction on alienation without the consent of the officers or other stockholders. It does not even impose any restriction on present holders or during the lifetime of any one acquiring the stock by purchase. Only in case it is acquired by will or inheritance or a conveyance taking effect at death is the person so acquiring obliged to give such person as the directors may designate thirty-day option thereon. If not exercised in that period all restrictions are removed.

We are of the opinion, however, that under the statutes in force in this state at the time of its enactment, authority is lacking for the adoption of such a by-law. The only statutes bearing thereon are Secs. 49, 50 and 53, Chap. 51, R. S., and Secs. 87 and 96, Chap. 144, P. L., 1923.

Secs. 49 and 50 of Chap. 51 and Sec. 87 of Chap. 144, P. L., 1923, merely authorize in general terms the adoption of by-laws that are not inconsistent with the laws of the state. These sections relate, we think, to such by-laws as may be essential for the general

management of the corporation and can not be construed as authorizing the imposing of any restrictions upon the alienation of its stock other than such as may be necessary to ensure the corporation having a record of its stockholders and to prevent fraud in the transfer of its stock. Nor do we think that Sec. 53 of Chap. 51 in authorizing the creation of two classes of stock was intended to authorize the creation of two kinds in respect to a freedom of alienation. Such statutes have a well-defended purpose in corporation law in authorizing classes of stock with differences as to preferences and voting power. Such legislative authority has not been construed or invoked so far as we know to authorize the creation of different classes of stock in respect to freedom or limitation of alienation.

The power to enact by-laws under the general corporation law is not an unlimited one, *Kennebec & Portland R. R. Co.* v. *Kendall*, 31 Me., 470 ; *Jay Bridge Corp.* v. *Woodman*, 31 Me., 573 ; *Sargent et al* v. *Franklin Ins. Co.*, 8 Pick., 90 ; *Ireland* v. *Globe Milling Co.*, supra.

However, the weight of the authority and we think the tendency of the more recent decisions, as the reasons for maintaining the integrity of the stockholding body have become more manifest, is to sustain such restrictions if reasonable and the stock has been accepted following the adoption of the restriction and with knowledge of its provisions, whether valid as a by-law or not, on the ground that it constitutes a valid agreement between the stockholder and the corporation, especially if it goes no farther than to give an option on the stock for a limited period. *New Eng. Trust Co.* v. *Abbott*, supra ; *Weiland* v. *Hogan*, supra ; *Model Clothing House* v. *Dickinson*, supra ; *Blue Mt. Asso.* v. *Borrowe*, supra, and other cases above cited.

Restricted limitations on the alienation of the stock such as are contained in this by-law can not be held to be against public policy, especially in case of bank stock. The provisions of the charter of this bank make each holder of stock liable to the par value of his stock for the debts of the corporation. Sec. 9, Chap. 96, P. & S., 1887. It, therefore, is important that its stockholders should be persons of responsibility as well as actively interested in the welfare of the Bank. Such a restriction as was contained in the by-law when

the stock comes into the hands of persons other than by purchase may well be promotive of the public interests.

As the Court said in *Dane* v. *Young*, 61 Me., 160, 167, "As stockholders are made liable for the debts of the bank to the amount of their shares, it is important for them to know whether their associates are responsible or worthless."

The plaintiff, while he returned the certificate issued to him, did not couple it with an absolute refusal to accept but pending the determination of the right of the corporation to enact such a by-law. When the regular cash dividend was declared and paid on the old and new stock then outstanding in January, 1928, he accepted and retained it.

If he did not accept the stock, he was not entitled to the dividend and should have returned it. By retaining it, we think he must be held to have accepted the stock with the restrictions.

Lastly, we think this plaintiff has no standing in a court of equity. He has not only accepted the benefits of the stock which he now seeks to have issued to him free of all restrictions, but before bringing action to determine whether such was valid, he delayed until at least 968 shares of the stock were issued and accepted subject to the by-law by those entitled thereto and without objection, and several of the shares have since been transferred to purchasers with full knowledge of the restriction.

The stockholders were not entitled to any stock with or without restrictions as a matter of right but only in pursuance of the vote of the directors. It was not purchased. In voting to issue the new stock, the directors authorized only the issuance of stock with a restriction upon future alienation. Their vote can not be construed by this court as authorizing the issuance of stock without the restriction, even if the by-law is held invalid.

The directors in effect declared a dividend payable in stock with certain limitations on its alienation. A vote authorizing the issuance of stock restricted as to alienation as a method of dividing up the profits is not a vote to issue stock free of any restrictions. Because the directors voted to issue stock so restricted for this purpose, as a method of distributing the profits, it does not follow they would have taken the same action if the stock must be issued without any such restriction.

For a holder of ten shares out of one thousand after such delay and having accepted the dividend thereon to now ask a court of equity not only to declare this by-law invalid but to require the bank to issue new stock to the plaintiff without such restriction would leave all the other stockholders who have accepted the stock bound by the restriction.

This court, therefore, can not, even if the plaintiff were not held to have accepted the stock, now direct the bank to issue to him stock of another character from that authorized by the directors and now held by his associates who have in good faith accepted it with the limitation.

The plaintiff's laches in taking action renders it unconscionable to grant the remedy prayed for. *Fieldin* v. *Lancashire and Yorkshire Ry.*, 64 Eng. Reprint, 237. *Gen. Invest. Co.* v. *Beth. Steel Corp.*, supra, p. 245.

*Bill dismissed with costs.*