[Civ. No. 11885. First Dist., Div. One. Apr. 2, 1942.]

OAKLAND SCAVENGER COMPANY (a Corporation) et al., Respondents, v. JOHN GANDI, as Executor, etc., Appellant.

Cross & Brandt for Appellant.

Decoto & Hardin and J. Meredith Wortz for Respondents.

PETERS, P. J.—Plaintiff Oakland Scavenger Company brought this action for declaratory relief against John Gandi, executor of the estate of Giacomo Gandi, to obtain a determination of its rights in 100 shares of stock of the company issued in the name of deceased. Thomas Ferro, president of the company, joined as plaintiff, suing individually and on behalf of other stockholders. The defendant appeals from the judgment by which it was decreed that the company held the stock in trust, to sell it at the best price obtainable from a person qualified and capable of assuming the vacancy caused by the death of Gandi and to deliver the proceeds to defendant as executor. The judgment is based on a resolution adopted by the board of directors and thereafter by the stockholders. It further provided for payment to defendant executor of dividends and profits in the sum of $912, declared on the stock to August 31, 1939, and of dividends and profits which should be declared to the date of sale and transfer. Defendant executor claims the stock free of any rights in the corporation or stockholders. By answer and cross-complaint he prayed for a decree quieting title.

The company has 183 stockholders, each owning 100 shares. All stockholders work for the company. At the end of each month it is determined how much shall be paid to stockholders, each receiving the same amount, less individual deductions at a fixed rate per day for working days missed. The figure is such that a balance remains due notwithstanding a worker has been absent a full month, or has died, as in the case of defendant's testate. The company is not incorporated under the provision for organization of cooperative corporations. (Section 653.1 et seq., Civil Code.) The articles of incorporation and by-laws did not provide that each stockholder should work for the company, nor for uniform stock holdings and payments. The practice apparently rests on long established custom.

The contentions of appellant may be divided into two groups. First, defendant contends that it is extremely doubtful whether any resolution of this character was passed at all; that if a resolution was passed it appears as a matter of law that it was not the resolution found by the court; that the resolution was not binding on defendant's testate because it does not appear that he voted for it or endorsed and delivered his stock to the corporation pursuant to the resolution. A second group of contentions concerns the validity and effectiveness of the resolution found by the court, assuming that deceased endorsed his stock pursuant thereto. It is contended that the resolution is void as an unreasonable restraint on a stockholder's right of alienation; that there was no intent to create a trust and that the resolution is too uncertain to create an enforceable trust. The basic question here presented is whether a trust was created. If no title to the stock vested in the corporation as trustee it was a mere agent whose rights would not survive death of the stockholder.

The company was incorporated in 1920. In 1926 it changed its name from United Oakland Garbage Company to Oakland Scavenger Company by court decree. Thereafter new certificates were issued to show the changed name. The stockholders left their new certificates in possession of the corporation to guard against loss. The resolution which gives rise to this action was passed by the board of directors on March 12, 1930, and by the stockholders on March 15, 1930. Thereafter all stockholders endorsed their certificates and the company continued in possession.

The complaint as originally filed set forth the resolution as follows:

"RESOLVED:—That, all stockholders endorse and return Certificate of stock to the Corporation and that in case one of the stockholders meets with an accident and death befalls him, the Heir of Stock transfers certificate of stock in name of son providing therefore that the Corporation find the son capable to fulfill the Vacancy of the Deceased member, and Whereby if heir of stock has no son then the Corporation has an authority to sell stock at valued price on the date of Deceased member, thereupon the corporation delivering money to the heir of Stock."

The defendant's testate died on May 7, 1938. He did not die an accidental death. He left a widow, but no sons, nor any daughters so far as the record shows. In terms the reso-

lution set forth above applies only in case a stockholder "meets with an accident and death befalls him." In his opening statement counsel for plaintiffs stated that it had been discovered that the resolution as set forth in the complaint did not correctly portray the corporate action, that it was to apply in the event of death from any cause. Thereafter the complaint was amended to set forth the resolution as follows:

"RESOLVED: That each of the stockholders endorse and deliver to the Oakland Scavenger Company the Certificate of Stock owned by him, and that in case of the death of any stockholder the Oakland Scavenger Company, be and it is hereby authorized and directed to transfer said Certificate of Stock to the son of the deceased person, if in the opinion of the Board of Directors of said Oakland Scavenger Company, the said son is qualified and capable of assuming the vacancy created by the decease of the father, and if said deceased stockholder leaves no surviving son, or if the said son, in the opinion of the Board of Directors of the Oakland Scavenger Company be not qualified and capable of assuming said vacancy, then the Oakland Scavenger Company, be and it is hereby authorized and directed to sell the said Certificate of Stock, and the shares represented thereby, at the best price obtainable from a person qualified and capable of assuming said vacancy, delivering the money so received from such sale to the surviving wife of said deceased stockholder, or if he leaves no surviving wife, to his heirs at law."

The resolution as found by the court differs from that set forth in the amended complaint in that it provides for delivery of the proceeds of sale "to the duly appointed representative of the estate of the deceased stockholder." This is in accord with the allegations of defendant's answer that if plaintiff corporation has the right to sell the stock it is required to pay proceeds to defendant to be administered in the estate of the deceased.

All proceedings of the company were conducted in Italian. There was introduced in evidence a minute book in English, showing minutes of the board of directors from December 26, 1925, to June 28, 1933. During this period until sometime in 1933 the witness D. Rossi was secretary. He testified that he took notes in Italian at the meetings and thereafter wrote up complete minutes in Italian. The English minute book was a translation of the Italian, made by the bookkeeper, Amelia Rettagliatta, who was with the company until May 1, 1935. She customarily wrote the translation in longhand in the

English minute book and Rossi signed the minutes of each meeting as thus translated. Rossi testified that she could read Italian "pretty well", that when she didn't understand she called him.

Attached by gem clip to page 84, on which appear minutes of a meeting of the board of directors held on March 26, 1930, is a sheet of paper with typewriting. It reads: "At the meeting of the Board of Directors on March 12th, 1930, it was read as follows: [here the resolution as set forth in the original complaint appears]." On the same page there follows this statement: "At the general meeting of the Stockholders of the Corporation on the date of March 15th, 1930, the foregoing resolution was read before all stockholders: [here also is the resolution as set forth in the complaint as first filed].

"This resolution was passed by Mr. Francesco Piombo, and seconded by Mr. Louis Re, and unanimously accepted by our Stockholders of the Corporation." The page is unsigned.

The corporation was unable to produce the minute book kept in Italian by Rossi or his roll call book. He testified that when his term as secretary ended he placed his books in a box and turned them over to the new secretary, Ben Cerruti. Cerruti testified that the box had been left in an upstairs room in the office of the company, but was no longer there. He and Ferro, president, had searched for it, but had been unable to find either the box or the Italian minute book. The English minute book was kept by the bookkeeper in the office safe.

Appellant suggests that there is "some question" as to whether any resolution at all was passed, although we do not understand him to contend that as a matter of law the evidence is insufficient in this respect. He observes that the minutes were generally written in longhand and signed by the secretary, and that no space was left in the minute book between the longhand minutes of the directors' meeting of February 26, 1930, on page 83, and those on the following page for the meeting of March 26, 1930. The typed matter on the sheet clipped to page 84 obviously does not set forth complete minutes of either the directors' meeting of March 12, or the stockholders' meeting of March 15. In fact the book contained only minutes of the directors' meetings and of the annual stockholders' meetings at which directors were elected, although the Italian minute book, according to Rossi, included minutes of all stockholders' meetings, held regularly once a month. It would have been a departure from practice, there-

fore, for the minutes of the stockholders' meeting of March 15 to have been included.

Why the minutes of the directors' meeting of March 12, 1930, were not set forth in the usual form is not explained, but their absence and the inability to produce the Italian minute book do not establish conclusively that no meeting was held and no resolution passed, in view of the testimony of those who were officers and directors at the time as to the passage of the resolution. An examination of the minute book reveals other resolutions in typewriting, pasted rather than clipped to the book, which are not shown by the longhand English minutes. Pasted to page 100 are minutes of a board of directors' meeting held on January 28, 1931, showing passage of a resolution amending the provision of the Articles of Incorporation setting forth the purposes of the corporation. Longhand minutes of the same meeting, on page 100, contain no reference to this resolution.

Pasted to page 101 is a typed page setting forth, but not in complete minutes, a resolution in regard to compensation insurance of the company passed at a directors' meeting on January 7, 1931. There are no longhand minutes for this meeting.

Pasted to page 103, again not included in complete minutes, is a lengthy resolution passed at a directors' meeting on February 4, 1931, providing for the purchase by the company of all outstanding capital stock of the Contra Costa Hog Company and of certain contracts at a purchase price of $75,000 to plaintiff corporation. There are no longhand minutes for this meeting.

The typed resolution changing the articles, pasted to page 100 above other longhand minutes, is not signed by the secretary. The other two resolutions noted above are signed. In the circumstances it is readily apparent that great significance cannot be attached to the omission from the book of complete longhand minutes of a directors' meeting held on March 12, 1930, as giving rise to a suspicion that no resolution at all was passed on that date.

For the plaintiff corporation the following witnesses testified as to the contents of the resolution of March, 1930: Ben Cerruti, director in March, 1930, who thereafter succeeded Rossi as secretary; F. Martino, a director in March, 1930; Louis Re, vice-president of the company at the time of trial, a director in 1930; Dominic Rossi, a director and secretary in 1930. The only witnesses called by defendant were Cerruti,

called under section 2055, Code of Civil Procedure, and defendant himself, who did not testify as to the terms of the resolution. Plaintiff Ferro, president of the company, was absent in Europe at the time of trial.

The several witnesses for the company all testified that the resolution was to apply whatever the cause of a stockholders' death. The entire lack of reason for invoking the resolution only when a stockholder died an accidental death in itself strongly supports this testimony. The resolution as phrased on the typed sheet attached to the minute book is so ineptly worded, obviously by one not familiar with English, as to be ambiguous, if not meaningless. As written it requires explanation and interpretation. Appellant does not contend that corporate minutes are more than prima facie evidence of corporate action. In view of the absence of any reason to confine the resolution to cases where a stockholder died accidentally it may be doubted whether the record would support any other conclusion than that based on the testimony of plaintiffs' witnesses that it was to apply whatever the cause of death.

■ The further contentions that the evidence is insufficient as a matter of law to show that decedent assented to the resolution, or that he endorsed and delivered his stock pursuant to it, cannot be upheld. The question of decedent's assent to the resolution is of major importance if the resolution is sustained on the theory that it operated as an agreement between the stockholders themselves and between them and the company, as will be pointed out hereafter. There was testimony that decedent was present at the meeting, that all stockholders were present. Absence from monthly meetings was punishable by fine and attendance was regularly so large that a hall was rented. The vote on the resolution was by show of hands. There were no dissenting votes. All stockholders thereafter endorsed their stock. Appellant argues that the testimony is consistent with deceased not having voted at all. A failure to vote under such circumstances indicates assent where a stockholder subsequently endorses his stock and leaves it with the corporation, as provided by the resolution.

■ Appellant's further contention that it does not appear that the stock was endorsed pursuant to the resolution cannot be sustained. The only reasonable inference to be drawn from his endorsement in the circumstances is that it was pursuant to the resolution. The deposit of the stock, unendorsed, to

guard against its loss, had been made several years previously. Even had decedent not been present at the meeting or had not taken part in the vote, his act of endorsing the stock pursuant to the resolution would indicate his assent and purpose to be bound by it.

On this branch of the case the problems presented are all factual. The testimony of the witnesses does show contradictions, which respondents explain as due to their difficulty with the English language. It cannot be held as a matter of law that the evidence is insufficient to support the findings. There being substantial evidence and inferences therefrom to support the findings, this court has no power to disturb the judgment based thereon.

The next question presented is whether the endorsement and deposit of the stock with the corporation pursuant to the resolution was effective to create a trust in the stock. Unless an interest presently passed to the corporation as trustee when the defendant's testator endorsed the certificate and left it with the corporation, the arrangement was ineffective to create a trust. (*Cohn* v. *Klein,* 209 Cal. 421 [287 Pac. 459]; *Nichols* v. *Emery,* 109 Cal. 323 [41 Pac. 1089, 50 Am. St. Rep. 43]; *Tennant* v. *John Tennant Memorial Home,* 167 Cal. 570 [140 Pac. 242]; *Niccolls* v. *Niccolls,* 168 Cal. 444 [143 Pac. 712].) That is, if title does not pass until death, the transfer is testamentary, and must comply with the formalities prescribed for wills. If no interest passed in the present case until death of the stockholder, or if the arrangement was a mere agency which was revoked by death of the stockholder, then plaintiff corporation and its stockholders have no rights by virtue of the resolution and acts done pursuant thereto.

In order to create a valid trust the transfer to the trustee need not be of a present interest, but may be of a future interest. All that is required is that an interest presently pass to the trustee. In *Tennant* v. *John Tennant Memorial Home, supra,* a grantor executed and delivered a deed absolute in which she reserved a life estate, power to revoke and power to sell. The court held that the same rules applied as to the case of a similar grant to a trustee, that an interest presently passed which saved the grant from being testamentary, notwithstanding the power of revocation and power of sale reserved. This case has been cited with approval in *Gordon* v. *Barr,* 13 Cal. (2d) 596 [91 P. (2d) 101] and *American Bible Society* v. *Mortgage Guarantee Co.,* 217 Cal. 9 [17 P. (2d) 105]. (See notes 73 A. L. R. 209; 11 A. L. R. 23.)

In *Nichols* v. *Emery, supra,* a father executed a deed to his son as trustee, with instructions in the deed to sell within ten months of the grantor's death and to divide the proceeds in a certain manner. A power of revocation was reserved, and no disposition was made of the estate intervening between the date of the deed and the death of the trustor. The court held that there was a present transfer of interest which was operative and absolute until revoked by the grantor, that there remained in him a life estate.

In the case herein the resolution does not purport to restrict a stockholder's right to sell the stock during his lifetime. There is evidence that it was the practice to make no sale without the approval of the company. However, under the rule of the Tennant case, the retention of the right of the stockholder to sell the stock during his lifetime would not prevent the resolution and acts done under it from being a present transfer.

It was not necessary to the transfer of an interest to the corporation as trustee that the corporation's rights be shown on its stock transfer book. The transfer was not the usual transfer of stock ownership. The corporation apparently acted without legal advice and it is, therefore, understandable that these special transfers should not be registered on its books.

Appellant objects that no intent to create a trust was shown here. The purpose to be accomplished appears beyond dispute—that if the stockholder left no capable son the company was to have the right to sell the stock, but that it should have no beneficial interest in the proceeds. To the accomplishment of this purpose it was necessary that a legal interest pass to the company before the death of the stockholder. The endorsement and delivery of the stock were an appropriate means of making such a transfer. That is, the stockholders intended to accomplish their purpose by the means adopted. The trial court, therefore, properly held that their intent was to create a trust although the stockholders doubtless did not fully understand the legal nature of their acts.

As indicating that there was no intent to transfer legal title by means of the endorsement and delivery of the stock, appellant relies strongly on a stipulation made by respondent's counsel during the trial. The following occurred:

''The Court: As I understand the testimony of the pre-

vious witnesses—I don't know but maybe you will stipulate to it, to save time—that the certificate of stock of the deceased was kept in the possession of the Corporation, and no transfer was made of it to the Corporation, nor did the Corporation claim any title to that certificate of stock by reason of its endorsement in blank, or otherwise, isn't that the situation? Mr. Decoto [respondents' counsel] : That is the stipulation, and I will make that stipulation, if the Court please. Mr. Brandt [appellant's counsel] : And that the endorsement and leaving of the stock with the Company was not intended to be, and did not transfer any legal or beneficial interest in the stock, or title to it? Mr. Decoto: I am willing to make the stipulation as recited by the Judge, and I think that covers it fully. Mr. Brandt: Well, I don't know that the Company doesn't claim any title to the stock. The Court: In itself? Mr. Brandt: In itself. Mr. Decoto: We have stipulated to that. Mr. Brandt: Well, possibly it covers the matter. In other words, Mr. Decoto, so that we can save time, the stock was merely left in the possession and custody of the Oakland Scavenger Company? Mr. Decoto: Well, when you go into that, I would have to add to that, for certain purposes. The Court: Well, I presume it is your contention that the stock was left with the Company, and was endorsed in blank, so that, in case of the death of one of the members, if there were no son to qualify to carry on, that the Corporation could then sell the stock? I presume that is your contention? Mr. Decoto: That is our contention. The Court: That is the only purpose for which it was endorsed in blank and left with the Company? Mr. Decoto. Yes. The Corporation claims no title in itself to the stock.''

These remarks, when the record is read as a whole, do not amount to a stipulation that no trust was created. When the circumstances under which this stipulation was made are considered, it is clear that it should be given no broader meaning than that the company had no beneficial title, that it had no title or interest in the stock in the sense that it was without right to the proceeds from the sale of the stock, that its title was only in aid of a right to sell the stock. This is made clear by the fact that prior to the institution of this action respondents' counsel had taken the position that under the resolution the corporation itself became absolute owner upon the death of a stockholder, with the obligation only to

pay a price therefor. The stipulation made it plain that he no longer adhered to this position. It was thereafter brought out during the trial that if the corporation was to succeed it must be on the theory of a trust.

As indicating that there was no intent presently to transfer a legal interest by the endorsement of the stock, appellant also refers to a provision contained in new by-laws. adopted after this controversy arose. The by-law reads: *"Upon the death of the stockholder,* full ownership and title to his stock certificate, and the shares of stock represented thereby *shall pass to and become vested* in the Board of Directors of the Oakland Scavenger Company, for the purposes set forth in this Article."  (Italics supplied.)  Since the new by-law provision was intended to make more certain the accomplishment of the object of the earlier resolution, and in appellant's analysis under the new provision no interest passed until the death of the stockholder, he argues that it cannot be presumed that the intent under the early resolution was any broader than the by-law. But use of such language as that contained in the by-law is not conclusive as to when an interest passes. The question depends on the whole context, interpreted in the light of surrounding circumstances. (*Cohn* v. *Klein,* 209 Cal. 421 [287 Pac. 459] ; *Randall* v. *Bank of America,* 48 Cal. App. (2d) 249 [119 P. (2d) 754].)

Appellant's further contention that if a trust was created it was invalid because the effect is unreasonably to restrain a stockholder's right of alienation, cannot be sustained. It is not necessary here to consider whether the restriction would be valid as a by-law. A by-law adopted by majority vote binds stockholders who do not assent. Even a by-law, if invalid, may operate as a binding agreement on those who assent to it, if not opposed to public policy as a contract. (*Vannucci* v. *Pedrini,* 217 Cal. 138, 143 [17 P. (2d) 706] ; *People's Home Savings Bank* v. *Sadler,* 1 Cal. App. 189 [81 Pac. 1029] ; *Jennings* v. *Bank of California,* 79 Cal. 323 [21 Pac. 852, 12 Am. St. Rep. 145, 5 L. R. A. 233] ; 6A Cal. Jur. 327.)  The resolution herein was not adopted as a by-law. All stockholders in general and Gandi in particular assented to it and endorsed their stock and permitted it to remain with the company as contemplated by the resolution. As an agreement it is not opposed to public policy. By the resolution each stockholder surrendered his right to make testamentary disposition of his

stock, although not of the proceeds from its sale. But this results in any case where the owner of property creates a trust without reserving a right to revoke. The situation insofar as the question of the restraint on the ,owner's right of alienation is concerned is no different where the subject of the trust is stock than where it is other personal property or real property.

The trust is not invalid by reason of the fact that its object was to give the corporation some control of its stockholder personnel. The reason for such control in a corporation operated as was respondent is apparent. This purpose is frequently accomplished by agreements which provide that before a stockholder sells his stock he must first give the corporation or other stockholders an option to buy it. Such agreements are generally sustained. (*Baumohl* v. *Goldstein,* 95 N. J. Eq. 597 [124 Atl. 118]; *Nicholson* v. *Franklin Brewing Co.,* 82 Ohio St. 94 [91 N. E. 991, 137 Am. St. Rep. 764, 19 Ann. Cas. 699]; 8 Fletcher, Cyclopedia Corporations (Rev. and Perm. ed.), p. 786; notes, 117 A. L. R. 1359; 65 A. L. R. 1168, 1183, citing numerous cases.) In this state it has been held that although a provision giving other stockholders an option to purchase is valid as an agreement, an option to the corporation to purchase for itself violated section 309, Civil Code, as it then stood. (*Mancini* v. *Patrizi,* 87 Cal. App. 435 [262 Pac. 375]; *Mancini* v. *Patrizi,* 110 Cal. App. 42 [293 Pac. 828]; *Vannucci* v. *Pedrini, supra.*) The section prohibited the dividing, withdrawing or paying to the stockholders, or any of them, any part of the capital stock of the corporation except such as remained after payment of its debts on dissolution. The arrangement in the present case is no more objectionable than the option plan insofar as the perpetuation of control by existing stockholders or directors is concerned.

In *Krauss* v. *Kuechler,* 300 Mass. 346 [15 N. E. (2d) 207, 117 A. L. R. 1355], the court upheld the validity of an agreement by which it was provided that at the death of a stockholder his shares of common stock should automatically become the property of the corporation by paying to the estate of the deceased a sum agreed upon by the remaining stockholders. In *Searles* v. *Bar Harbor Banking & Trust Co.,* 128 Me. 34 [145 Atl. 391, 65 A. L. R. 1154], the court upheld an agreement between stockholders as follows: ''Any person acquiring through will, or descent, or by conveyance to take

effect at death, any stock of this corporation issued after the passage of this by-law shall be bound to offer the same for sale and transfer to any party appointed by the Trust Company Directors at a fair value of such stock as determined by said Directors, or if said value is not satisfactory to the estate, at the fair value of said stock as determined by three appraisers, one to be chosen by the estate, one chosen by the Directors and one chosen by those two, but any and all appraisers must be chosen from and be when chosen, stockholders in said Trust Company.''

The resolution in the present case applies only in the event of the death of a stockholder. It does not purport to restrict his right of alienation during his lifetime. Provisions restraining a stockholder's right of transfer are strictly construed. (18 C. J. S. 921.) Under the rule of the Tennant case, *supra*, a transfer does not become testamentary because the transferor reserves the absolute power of sale during his lifetime. Witnesses herein testified to a practice of not selling without receiving the approval of the company, but appellant himself contends that it was not shown that there was a binding agreement to that effect. However this may be, the present action concerns the effect of the resolution which expressly was made to apply only in the event of a stockholder's death. We are not here concerned with what restrictions during the lifetime of a stockholder will operate as an unreasonable restraint on alienation.

It is also objected that the resolution is ineffective because the phrase ''qualified and capable of assuming the said vacancy'' is too uncertain; that it in effect enables the company to sell at a low price to one whom it prefers for some reason, while rejecting the higher bid of another who is qualified and capable. Appellant contends that this is just what the company is attempting to do in this instance. The trial court made it plain in his remarks during the trial that he did not so construe the resolution; that the discretion vested in the directors was not to be exercised arbitrarily or in bad faith; that if the company rejected the higher bid of one who was capable the defendant would have recourse to the courts. (See *Krauss* v. *Kuechler*, 300 Mass. 346 [15 N. E. (2d) 207, 117 A. L. R. 1355].) The judgment as originally signed provided that the company should sell the shares ''at the best price obtainable from a person *in the opinion of the Board*

*of Directors of Oakland Scavenger Company,* qualified and capable of assuming the vacancy created by the death of Giacomo Gandi.'' When the italicized phrase was called to the court's attention on motion for new trial it was deleted.

Appellant makes the further contention that the resolution is void for uncertainty in that it does not provide expressly for the contingency of a stockholder having two or more sons, all of them capable to assume the vacancy in the company. The reasonable implication is that in such event the company shall select the son whom it deems best qualified and most capable. In view of the long standing scheme for uniform stock holdings of 100 shares, with payment of the same wages or dividends to each stockholder, it cannot be held to have been within the contemplation of the parties that a deceased owner's shares should be divided between his several sons. The arrangement results in a preference to one son over another. But this was a matter for consideration of the stockholders when they unanimously passed the resolution.

The judgment is affirmed.

Goodell, J. pro tem., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 28, 1942. Curtis, J., voted for a hearing.