TINTIC INDIAN CHIEF MIN. & MILL. CO. et al. v. CLYDE et al.

No. 5258. Decided May 6, 1932. (10 P. [2d] 932.)

338

*Claude F. Baker*, of Eureka, for appellants.

*Will L. Hoyt*, of Nephi, for respondents.

MOFFAT, District Judge.

In another and earlier cause between the Utah Standard Mining Company, a corporation, plaintiff in the former action, and the Tintic Indian Chief Mining & Milling Company, defendant in the former action, and plaintiff in this action, a judgment in favor of the defendant in that action was rendered for costs. The purpose of this action is to require the subscribers of stock in and incorporators of the Utah Standard Mining Company to pay that judgment because of a claimed stock subscription liability attaching to them as such stockholders, claiming that payment had not been made for the stock subscribed by them.

As will later appear, the facts are not in dispute. After the usual proceedings incident to the bringing of a cause of action to issue and trial, the plaintiff opened its case and submitted evidence to the court in support of its complaint, which, in substance, alleges: Corporate existence of the Tintic Indian Chief Mining & Milling Company, plaintiff and appellant; corporate existence of the Utah Standard Mining Company, the judgment debtor in the former action; the recovery of the judgment against said company; the description of the mining claims; the finding and judgment that the mining claims were valueless under that judgment; the conveyance of the mining claims to the Utah Standard Mining Company, in payment for the capital stock by the defendants in this action; the issuance of stock to them therefor; and sets out a complete copy of the articles of incorporation of the Utah Standard Mining Company; and further alleges that the conveyance of the alleged mining claims was the sole subscription to the entire capital stock; that said claims were received and accepted in full payment for the stock subscriptions; that no payment in money or money value was ever made by the stockholders for their subscriptions; that the Utah Standard Mining Company is insolvent; that execution had been issued on the judgment and had been returned unsatisfied; that demand for payment had been made upon defendants and refused.

The articles of incorporation of the Utah Standard Mining Company contain the usual provision against stockholders' liability, viz.: "The private property of the stockholders of this corporation shall not be liable for the debts of the corporation."

By another artitcle of the articles of incorporation pleaded in the complaint it is further provided:

"The capital stock of this corporation subscribed by each of the incorporators * * * is fully paid by the conveyance to said corporation * * * of all their right, title and interest, severally, of, in, and to the mining claims, * * * which said property is necessary and essential to the pursuits * * * agreed upon, * * * and it is * * * agreed * * * that the fair cash value of the interest in said property conveyed by each of the incorporators is equal to the amount of his subscription." (Property described.)

There is also pleaded as a part of the complaint and attached thereto, as exhibits, a copy of the execution issued, with the return thereon, showing it wholly unsatisfied. There is also pleaded the notice of demand upon the subscribers of the captital stock of the Utah Standard Mining Company, whereby reference is made to the judgment and payment thereof demanded.

As proof of its alleged cause of action the plaintiff offered the following, and the same were received in evidence: The memorandum of costs and disbursements in the case of Utah Standard Mining Company against the Tintic Indian Chief Mining & Milling Company, with the affidavits of service, the original execution, the findings of fact and conclusions of law, the decree, and the original articles of incorporation of the Utah Standard Mining Company. The plaintiff rested its case. The defendants then interposed their motion for a judgment of nonsuit, specifying (a) that the complaint fails to state any cause of action against either of the defendants; (b) that the plaintiffs have failed to offer any competent evidence binding upon either of the defendants or tending to establish a cause of action against either of the defendants. The defendants' motion for nonsuit and dismissal

was granted by the trial court. The judgment of dismissal and nonsuit does not specify upon which of the grounds specified in the motion judgment was granted. The trial court submitted a memorandum of decision, which is found in the files. This memorandum does not specify with certainty, but it seems want of sufficient evidence was the ground upon which the motion was granted.

The matter comes to this court upon four assignments of error specified as follows: (1) The complaint states a cause of action. (2) The defendant pleaded no valid defense. (3) A judgment on the pleadings having been entered, it was error to set it aside. (4) The judgment of nonsuit should not have been granted. Whether or not assignments of error numbered 2, 3, and 4 are accepted, as included in assignment numbered 1, is not indicated by the briefs or in the arguments. Both sides have directed their arguments to the question as to whether or not the complaint states a cause of action. In any event, it is not necessary to advert to more than two propositions: (1) Does the complaint state a cause of action? (2) Was there sufficient competent evidence submitted to the trial court to support a cause of action if sufficiently alleged? The two questions may in this case be more easily answer in one. We will examine the last one first, except as they may necessarily overlap.

The proof submitted as heretofore indicated was written and consists of: (1) The memorandum of costs and disbursements in the cause of Uath Standard Mining Company against the Tintic Chief Mining & Milling Company, with the affidavits of service. (2) The findings of fact, conclusions of law, and decree. (3) The original execution, with its return showing the same wholly unsatisfied. (4) The original articles of incorporation of the Utah Standard Mining Company.

It must be remembered that this is an action by a judgment creditor of a corporation seeking to recover from stockholders of such corporation. The mere relation of being

a stockholder in a debtor corporation does not under the law make a stockholder liable for the debts and obligations of the corporation. A stockholder or subscriber for stock in a corporation who has subscribed for or holds stock in a corporation for which he has not paid anything or only in part is liable for the unpaid stock or any balance remaining unpaid. This liability arises out of the debt owing to the corporation. It is an asset of the corporation and may be reached as any other asset, and, in case the debtor corporation does not do so itself, its unpaid creditors may themselves enforce, if it be necessary, this liability for the full discharge of their debts. *Rhode* v. *Dock-Hop Co.*, 184 Cal. 367, 194 P. 11, 16, 12 A. L. R. 437.

"It must be taken, then, that the right of a creditor of a corporation, which knowingly issues shares [of stock] as fully paid when they are not, to compel payment on them in full, proceeds upon the ground of fraud. This ground is entirely different from the ground upon which proceeds his right in the case of shares only partially paid up and issued as such, and it follows that a recovery may be had in the latter case when it cannot be in the former. In the case of partially paid shares issued as such, the stockholder, when he accepts his shares and enters upon the relation of stockholder, does so * * * upon the condition that his shares are subject to call for the unpaid balance upon them, and that he, as their owner, will respond to such call."

In this action the plaintiff, by its complaint, has pleaded the articles of incorporation and shown thereby that the private property of the stockholder is not liable for the debts or obligations of the corporation. The plaintiff does not allege or attempt to prove that the stockholders of the Utah Standard Mining Company are holders of partially paid shares. The allegation in the complaint is:

"That no stockholder of Utah Standard Mining Company, a corporation including the defendant stockholders have ever paid into said Utah Standard Mining Company, a corporation, any part or portion of the capital stock so subscribed by them, either in money or money value."

Had the plaintiff been able to stop here, the allegation would no doubt have been good as an allegation that nothing

had been paid for the stock, and that therefore it had alleged at least a prima facie case of an unpaid stock subscription, of a commercial or business corporation. The basis of the claim of the plaintiff against the corporation and the stockholder's liability rests in a judgment between plaintiff and the corporation of which the defendants are stockholders, in which judgment it is recited that mining locations then in litigation between the two companies, in so far as the plaintiff company, Utah Standard Mining Company, was concerned, were wholly void and complete nullities.

The articles of incorporation of the Utah Standard Mining Company are pleaded and proved by the plaintiff and show that the capital stock of the corporation subscribed for by each of the incorporators is fully paid by the conveyance to the corporation of the mining claims therein described, that the said mining claims are necessary and essential to the pursuits of the company agreed upon, that said claims are accepted as full payment for the stock subscribed by each of the incorporators and at an agreed cash value, the total being the full amount of the capital stock of the corporation. Thus both payment and nonpayment are alleged.

There is no allegation in the complaint that the value fixed upon the mining claims at the time of the incorporation of the Utah Standard Mining Company was not a reasonable value, or that there was any fraud or collusion in relation to title, or value, or that any of the matters relating to the mining claims, or locations, or organization of the company were fraudulent in any particular. No proof was tendered in any way relating to fraud. May one rest upon a judgment between two corporations, to which third parties are not parties, for the establishment of fraud? No such issue was presented, and a mere recital of what the evidence as between the contending corporations as to title is, is of no consequence as to persons not parties. Certainly the question of title does not depend upon value.

We think the trial court was right in granting the motion for a nonsuit upon the ground that there must be proof other than the judgment, execution, and failure to satisfy the same, existing between the Utah Standard Mining Company and the plaintiff in the action. It must be remembered that the Utah Standard Mining Company is a mining company and was organized under the law relating to mining companies, and the provisions of the statute relating to conveying property to a mining company in payment for subscribed capital stock. Does a different rule of law apply to the organization of and subscription to the capital stock of a company organized for mining purposes, and the payment for the subscribed capital stock, than the rule applying to business or commercial corporations? Under the laws of the state of Utah, a different provision is made for mining and irrigation companies from that for business corporations as to the payment in property for original stock subscriptions. If a corporation were a commercial or business corporation, as distinguished from a mining or an irrigation corporation, the question in the opinion of the court would be quite different, but we are here dealing solely with a mining corporation, and under the law in this jurisdiction the organization of a mining company and the subscription to the capital stock paid in property must be examined in the light of the statute relating to mining companies, and the decided cases. The "true value rule" prevails in this jurisdiction as to business and commercial corporations.

The case of *Henderson* v. *Turngren*, 9 Utah 432, 35 P. 495, 497, is a case in which the plaintiff was a judgment creditor of an insolvent mining corporation. The articles of incorporation were introduced in evidence, and contain the provision that the consideration of the amount of the capital stock consisted of the aggregate valuation of the mining claims and properties which were described. They were conveyed to the corporation. The complaint further alleged the recovery of a judgment; the issuance of an execution thereon; a return nulla bona; that the corporation was insolvent

and had no property or assets to pay the judgment; that payment of the judgment had been demanded and refused; that the directors of the company refused to collect the unpaid subscriptions to capital stock. It was found by the court that the property alleged to have been conveyed to the corporation in payment for the stock was not public land, that it was private property held in fee when the locations were made, and that the incorporators conveyed absolutely nothing to the corporation by the quitclaim deeds which were executed; that such a stock subscription was valueless and was sufficiently proved. The court said:

"We do not believe any public good is promoted by the formation or operation of corporations founded, as this one was, upon absolutely nothing of value, and which are a cheat upon every one who deals with them and extends to them the smallest credit.

"If the question of public policy is involved in this decision, we believe it will be best promoted by holding to a strict account all those who engage in the very questionable business of creating business corporations that are insolvent from their very inception."

Since the decision was rendered in the *Henderson* v. *Turngren Case,* supra, the statutes of the state of Utah have been changed in relation to the taking of property for a stock subscription at the time of incorporation of companies, and the Henderson v. Turngren Case has been referred to at different times in the late decisions. The conception of the purpose and basis upon which mining companies are begun has changed somewhat since the decision of the case of Henderson v. Turngren. It was decided before the time of statehood.

In the case of *Salt Lake Hardware Co.* v. *Tintic Milling Co.,* 13 Utah 423, 428, 45 P. 200, 201, the following is said:

"The personal liability of the stockholders for their unpaid subscriptions to the stock is secondary to that of the corporation, and does not accrue until the corporation assets have been exhausted, or clearly shown to have been insufficient to pay the judgment rendered against it, or that it has no property, * * * or, for same good cause alleged, it is made to appear reasonably certain that the plaintiff cannot collect his judgment against it."

The court then cites the case of Henderson v. Turngren, and other cases, and says:

"In cases where the statute justifies the taking of property in payment for stock, if the property which was taken in payment was practically worthless, and is shadowy and unsubstantial in its nature, courts have held that there has been no payment at all, and that the stockholders are liable on their stock for the unpaid subscriptions."

The discussions in the later cases decided by this court relating to stock subscriptions in mining companies have been gradually drawing away from the position taken in the case of *Henderson* v. *Turngren,* supra.

The case of *Rolapp* v. *Railroad Co. et al.*, 37 Utah 540, 110 P. 364, 368, states: Under the Constitution (article 12, § 5),

"corporations shall not issue stock, except to bona fide subscribers thereof or their assignee, nor shall any corporation issue any bond, or other obligation for the payment of money, except for money or property received, or labor done."

The court further says:

"We think it is manifest that it was the intention both of the people who adopted the Constitution and the Legislature who passed the foregoing sections [316, 432 and 331, Comp. Laws Utah 1907] that the capital stock of corporations *excepting those created for mining and irrigation,* shall represent full actual value either in money or property, and further, that the subscribers for stock shall pay 100 cents on the dollar, or its equivalent, for the stock subscribed for by them, and until so paid that they are liable to creditors of the corporation in a proper proceeding for any balance remaining unpaid on their subscriptions. No doubt when stock is once 'full-paid,' whether in money, property, or labor, it may be bought and sold at any price but *commercial or business corporations* in this state may not issue stock to their subscribers for less than the face value thereof, which must be paid for, either in money or property." (Italics ours.)

In *Union Pacific R. Co.* v. *Blair,* 48 Utah 38, 156 P. 948, 950, referring to commercial or business corporations, the following excerpts correctly reflect the court's position:

"Courts, of course, must exercise the utmost care to prevent injustice by limiting the credits to be given to the actual value of the property turned over. * * *

"We can see no good reason, nor do we discern any equity in denying to those who, in good faith, have contributed property to a corporation in payment, or in part payment, of their subscriptions the right to show just what the property so contributed was actually worth in money at the time the corporation was organized. * * *

"If the statute is followed a corporate creditor may not attack property payments for subscriptions except for fraud, although the corporation is insolvent. * * *

"This court is also, in a measure at least, already committed to what is, by the text-writers, called the 'true value rule' in paying for stock subscription, as appears from the opinion in the case of *Richardson* v. *Treasure Hill M. Co.*, 23 Utah 366, 65 P. 74. True, the corporation involved in that case was a mining corporation and thus was expressly excepted from the operation of the provision of section 316 [Comp. Laws Utah 1907, now section 862, Comp. Laws Utah 1917, as amended by Laws of Utah 1921, chap. 22, p. 73] but from what is said in the opinion relating to the general subject of paying for stock subscriptions it is clear that the court, as then constituted, felt constrained to follow the 'true value rule.' "

Then referring to and quoting part of article 12, § 5, Constitution of the state of Utah, the court says:

"We can find nothing in the foregoing language which prohibits corporations from issuing stock for either property or labor, or for both."

In the case at bar there is no allegation that, in the organization of the mining company, the statute was not followed. On the other hand, the pleadings show that the statute relating to the affidavit of value, description, and conveyance of property, required to be made by the incorporators, was followed, and the property duly accepted by the corporation. There is no allegation in the complaint that there was any fraud. Under such circumstances, may a recovery be had without any allegation of fraud. We think actual fraud must be alleged and proved in such a case.

The case of *Richardson* v. *Treasure Hill Mining Co.*, 23 Utah 366, 65 P. 74, 77, was an action against a mining com-

pany and its stockholders. The incorporators were the holders of certain leases to property in a district known to contain mineral values. As to the actual value of the property at the time of forming the corporation, the evidence was conflicting. The court says:

"In the organization of a mining corporation, where the capital stock is to be paid for in property, the statute does not require the property to be accepted at its actual cash value, but at its fair estimated cash market value."

The valuation is at the time of incorporation and not at some future time. The property may become more valuable than estimated, or it may turn out to be worthless, and the corporation insolvent.

If stockholders and incorporators of a mining company were to be required to liquidate all corporate indebtedness, under a stockholders' liability, should the proposed development, in good faith, prove disappointing, no one would be willing under such circumstances to undertake the development of a mining enterprise and spend their money in developing a property of unknown value. Again the court says:

"Fortunately for the mining industry such is not the law. The statute contemplates no such results. Under its provisions, as we have seen, incorporators of mining corporations are permitted, *in the absence of fraud*, to pay for their stock in property at its estimated fair, cash market value, whatever its actual cash value may be; and this is so even where the property has no ascertainable market value. The fixing of such value is a matter of opinion. It requires the exercise of judgment; and the exercise of judgment for such purposes it is clear the legislature left to the incorporators where the corporation is organized for mining purposes. An opinion thus formed must be one honestly entertained, but it is subject to no other qualification. Honesty of purpose and good faith are the tests. Where, then, it appears that the value of mining property was so estimated and fixed by the incorporators without any fraudulent design, and that the owner had title thereto, and the same was conveyed to the corporation, and accepted by it, in full payment of its capital stock, the courts will not disturb the transaction, and parties dealing with a corporation are bound to take notice of what lawfully appears in the articles

of incorporation, and of the statutes under which the corporation was created. This is so whether the actual value of the property at the time of the incorporation was equal to the capitalization or not, or whether or not the property was afterwards found to be valueless. 2 Mor. Priv. Corp. § 591.

"And this cannot be regarded as a hardship upon corporate creditors, for the public has long been aware of the fluctuating and uncertain character of mining property as to value. To-day it may be worth nothing; in a few months or years, millions. Stocks are up one day and down the next. Fortunes are made and lost as if by magic. The price of the stock is determined by the prospects of the property, its location, development, riches, and quantity of ores, and the public confidence in the management. The amount of the capitalization is no indication of the value of the mine, and no one familiar with mining operations regards it so. Nor does any one who purchases fully-paid stock contract, or intend to contract, with a view to the nominal amount expressed in the certificate, or suppose that he so contracts by implication or otherwise. The nominal capital neither bears, nor is intended nor supposed by the public to bear, any relation to the real value of the property. What its real intrinsic value is is nearly always conjectural, if not entirely imaginary. All this is common knowledge, which those dealing with a mining corporation may usually be presumed to posess. A person contracting with such a corporation, chargeable with full knowledge of the manner in which and the purpose for which it was organized, has no equitable claim against the stockholders for unpaid capital, when it afterwards turns out that the property has become valueless, and the corporation insolvent. In such case the loss falls upon the stockholder to the extent of the money paid for his stock, and for the development of the property, and upon the creditor to the extent of credit given. Both share in the misfortune." *Rhode* v. *Dock-Hop Co.*, supra.

The court quoting from 4 Thompson on Corporations (2d Ed.) § 3983:

"On principle and authority, a creditor who deals with the corporation with full knowledge of the manner in which its shares have been paid for is not defrauded by the taking of over-valued property as payment of stock, and is estopped to raise that question."

And then continues the discussion:

"It must be taken, then, that the right of a creditor of a corporation, which knowingly issues shares as fully paid when they are not, to compel payment on them in full, proceeds upon the ground of fraud.

This ground is entirely different from the ground upon which proceeds his right in the case of shares only partially paid up and issued as such, and it follows that a recovery may be had in the latter case when it cannot be in the former. In the case of partially paid shares issued as such, the stockholder, when he accepts his shares and enters upon the relation of stockholder, does so, * * * upon the condition that his shares are subject to call for the unpaid balance upon them, and that he, as their owner, will respond to such call. This obligation is an asset of the corporation which it may enforce, and which, if it does not itself do so, its unpaid creditors may themselves enforce if it be necessary for the full discharge of their debts."

Comp. Laws Utah 1917, § 861, subsec. 11, as amended by Laws of Utah 1921, Chap. 22, provides that the articles of agreement of an incorporation shall be in writing, and, among other things, shall provide:

"Whether or not the private property of the stockholders shall be liable for its obligations."

Comp. Laws Utah 1917, X 862, as amended by Laws of Utah 1921, Chap. 22, provides, among other things:

"That where subscriptions to the capital stock of any corporation * * * shall consist, in whole or in part, of property necessary to the pursuit agreed upon, there must appear in the articles of incorporation a description of the property so taken, with a statement of the fair cash value thereof, which statement, except in the case of corporations organized for mining or irrigation purposes, shall be supplemented by the affidavits of three persons, to the effect that they are acquainted with said property and that it is reasonably worth the amount in cash for which it was accepted by the corporation; and the owners of such property shall be deemed to have subscribed such amount to the capital stock of such corporation as will represent the fair estimated cash value of so much of such property, or of such interest therein as they may have conveyed to such corporation by deed actually executed and delivered."

There is no charge in the complaint that the incorporators did not act in the utmost good faith, nor is there any evidence that they did not do so. It may be that the mining claims or locations contained valuable deposits of ore. It may be the incorporators believed honestly and firmly that

the locations were valid and their right to the locations unimpeachable. The fact that the company to which the mining locations were conveyed brought the action to settle the question of disputed title tends to support the good faith of the management in the title claimed. The determination of the question of title adverse to the Utah Standard Mining Company and the finding that the claims of the Utah Standard Mining Company "at all times since their attempted location and at the time of their attempted location are each and all wholly void, baseless and without any right whatsoever" is not a finding that the incorporators were not acting in good faith, and, as heretofore indicated, would not be binding on the defendants in this action had such a finding been made. Had the decision been the other way, the property conveyed might have been valuable. The determination of the question of title to the locations might have turned upon a question of either law or fact about which the incorporators were not properly advised. The affidavit of the incorporators states the value of the property as required by the statute, and the articles of incorporation state the value for which the locations were received. The stock was issued as fully paid. Affidavit of three persons, incorporators, required as to the value of the property conveyed to the mining company in payment for capital stock, fully complied with the statute. There were no stock subscriptions for any stock not fully paid by the conveyance of the property as indicated. There being no fraud alleged or proved, and in the absence of allegations or proof of actual fraud, the corporation being a mining company, we think the complaint does not state a cause of action against the defendant stockholders.

We find no error in the decision of the trial court. The judgment is affirmed, the respondents to recover costs.

STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.

CHERRY, C. J., did not participate herein.

FOLLAND, J. (concurring).

I concur in the result. Plaintiff relied on the decree in the case of Utah Standard Mining Company v. Tintic Indian Chief Mining & Milling Company as evidence that defendants had paid nothing for their stock in the Utah Standard Mining Company. A judgment against the corporation is conclusive upon stockholders as to the existence of the liability of the corporation, the amount of its liability, and the validity of the claim against the corporation. But a stockholder is not concluded by the judgment against the corporation in a proceeding to which he was not a party, as to questions affecting his individual liability to pay the claim against the corporation. 14 C. J. 1068, § 1662. A judgment binds and is admissible against the parties to the suit in which it is rendered and their privies, but it may not be introduced to establish the facts upon which it is based as against third parties. 10 R. L. C. 1116.

The judgment relied on by plaintiff cannot be used as evidence to preclude the stockholders, sought to be charged with the payment of the corporate debt, from disputing the fact upon which the judgment rests, namely that the corporation received nothing from the stockholders for the stock issued to them. That fact was put in issue by the answer herein, and the defendant stockholders are entitled to litigate that question as to them before they are concluded on that issue. The judgment for nonsuit was properly granted.