PACE v. PACE BROS. CO. et al. (LOVERIDGE et al., Interveners).

No. 5727. Decided December 29, 1936. (63 P. [2d] 590.)

For prior opinion, see 91 Utah 132, 59 P. (2d) 1.

*Irvine, Skeen & Thurman* and *Ned Warnock,* all of Salt Lake City, and *F. B. Hammond* of Price, for appellants.

*F. W. Keller*, of Monticello, and *Burgess & Adams* and *Lawrence Bothwell*, all of Grand Junction, Colo., for respondent.

*Bagley, Judd & Ray*, of Salt Lake City, as amicus curiae.

WOLFE, Justice.

Plaintiff has petitioned for a rehearing and besides strenuously rearguing the questions heretofore submitted, carefully considered and decided by this court, vigorously contends that $8,536 of the amount of the original notes was in payment of a surplus which had accumulated to the credit of Sidney D. Pace, successor of plaintiff, as of December 31, 1922, and that this court should have decided that at least this amount evidenced by the notes was in payment of said surplus; that it was in effect the payment of a dividend of this amount from earnings; and that the answer to the amended complaint of the intervener so pleaded. That pleading in this regard reads as follows: That "S. D. Pace was the owner of 51,460 shares and that on said date he was the owner of a credit for *paid in* surplus in said company for which he was entitled to have stock issued as of December 31st, 1922, in the amount of $8,536.00 and alleges that on or about the said 15th day of January, 1923, said Sidney D. Pace sold and delivered to said company said shares and his interest in the said paid in and undivided surplus for the sum of $60,000 and as payment for said stock and surplus, received," etc. In our opinion, in connection with a treatment of those statutes like New York's which specifically permitted the corporation's stock to be purchased out of "surplus," we intimated that the term "capital" might be used in two ways: First, that amount of the assets which is required to meet the liability to stockholders (all else being considered surplus, whether capital surplus or earned surplus); and, second, that capital might be used as synonomous with "assets." We did not attempt, in view of the way the word "surplus"

was used in the New York statutes, to go into the accounting refinements. We did not intend to say that surplus would have to be earmarked, although some of the wording may give that impression. We expressly said it was not necessary to consider whether, in order to be surplus, certain property must be set aside and earmarked as such. What we did say was that even if the word "capital," as used in section 103-12-4, subd. (2), R. S. 1933, is given the first of the previous definitions, so as to liberate all surplus above that for purchase of the company's stock under a statute permitting such surplus to be used for that purpose, there was still no evidence in this case that a surplus had been set up on the books. Perhaps it would not be necessary to so set it up. But if it were given that definition, it would go a long way toward making the spirit of the statute ineffective. Most property has a fairly wide margin for difference of opinion in value. It would be quite easy for a corporation to value its assets high and thus create a surplus and pay it out for one man's stock. When the creditors attempted to collect, they might have the onus of proving that many pieces of property were overvalued so as to show there was no surplus. If the actual property represented by paid-in capital should, on a boom market, rise above that measured by the corporation's stock liability, under such interpretation "surplus" might be used to buy the corporation's stock. When the market receded, the "capital" would be depleted and the treasury have in its place a batch of stock certificates. This would be rather hazardous for creditors. We think it was the intention of the Legislature to prohibit a corporation from paying out to stockholders any of its assets except profits in the form of dividends, or under such special circumstances as indicated in the opinion to be an exception. The word "capital" is to be read as "assets." Naturally a dividend cannot be paid to one stockholder in consideration for the surrender of his stock, hence plaintiff's argument that $8,536 of the $60,000 was a dividend to Sidney D. Pace must fall. Moreover section 18-2-

16, R. S. 1933 (formerly section 869, Comp. Laws Utah 1917), gives the corporation power to "disburse out of profits actually earned and on hand such dividends from time to time as the directors may deem prudent." In the pleadings or in the evidence, it is not shown whether this surplus came from earnings or whether it came from an enhancement of capital values. We have doubt as to whether dividends could be paid from the latter.

With these observations, which we hope will clear up several ambiguities in the decision, the petition for a rehearing is denied.

ELIAS HANSEN, C. J., and FOLLAND and EPHRAIM HANSON, JJ., concur.

MOFFAT, Justice (dissenting).

I think the matter should be re-examined at length. I therefore think a rehearing should be granted.