FIRST NATIONAL BANK OF MONTCLAIR et al., as Executors of SCHUYLER C. STIVERS, Deceased, Appellants, v. EVERETT S. COLDWELL et al., Individually and as Trustees, et al., Respondents.

Cox, J. (dissenting). The court below dismissed the complaint on the merits at the conclusion of plaintiffs' case. On this appeal from the judgment entered on such dismissal, the only question to be determined is whether plaintiffs made out a prima facie case. Under such circumstances, the established facts must be viewed in the aspect most favorable to plaintiffs and every permissible inference from those facts in favor of plaintiffs must be indulged (*Meiselman* v. *Crown*

*Heights Hosp.,* 285 N. Y. 389; *Kraus* v. *Birnbaum,* 200 N. Y. 130; *Bloom* v. *Dalu Corp.,* 269 App. Div. 192). Consideration is limited to the proof existing at the time of the nonsuit, without regard to any defenses pleaded in the answer or other assertions or documents not in evidence.

Schuyler C. Stivers, plaintiffs' testator, at his death on April 16, 1953, was the beneficial owner of 550 shares of the no par value common stock of Ford, Bacon & Davis, Inc., a New Jersey corporation, engaged in performing engineering services. In October, 1945, Mr. Stivers and his wife entered into an agreement with the corporation by which it was agreed that within 90 days after Mr. Stivers' death, or after his wife's death if she acquired said shares of stock from her husband by bequest or intestacy, such shares should be offered in writing to the corporation by his or her legal representatives at book value as of the close of the month next preceding the date of death, and that the determination of book value by the board of directors of the corporation shall be final.

The 550 shares owned by Mr. Stivers at the time he made the agreement were shortly thereafter surrendered and 550 new shares of common stock were issued in their place, and in June, 1947, Mr. Stivers subjected such new stock to a voting trust agreement and he received a voting trust certificate therefor. The October, 1945, agreement remained effective in respect of the new shares of common stock and the voting trust certificate.

In due course after Mr. Stivers' death, his wife having predeceased him, his executors offered to sell the 550 shares of common stock to the corporation at its book value, correctly computed as of the end of the month next preceding the date of his death, viz.: March 31, 1953. The board of directors of the company determined the book value of such shares to be $38,835.50 and the defendant voting trustees surrendered the 550 shares of stock to the corporation which set aside that amount for payment to plaintiffs.

It is undisputed that at March 31, 1953, the valuation date, the book value of *all* the shares of common stock of Ford, Bacon & Davis, Inc., aggregated $3,321,783.46, and that there were then outstanding 47,042 shares of the common stock. By dividing the total number of shares of common stock outstanding into the total book value of all such shares, the board of directors determined the book value of each such share of common stock to be $70.61. Such a result would undoubtedly be correct if all shares of common stock were on a parity. The record discloses that of the 47,042 shares of common stock outstanding, 32,000 shares of tenure (restricted) common stock, by virtue of the provisions of the stock certificates and the certificate of incorporation, as amended, had a substantially lower book value than the remaining 15,042 (unrestricted) shares of common stock.

By appropriate corporate resolution adopted on October 25, 1943, duly ratified by the stockholders and carried into the certificate of incorporation by amendment, the corporation adopted a so-called tenure plan. It was intended thereby to provide for permanent continuity of competent executives and staff, secure and retain the services of competent engineers and others to successfully operate its business, afford an opportunity for successful executives and key members to acquire an interest in the business, to be liquidated upon retirement and in other specified contingencies in an amount related to the then condition of the business, and to maintain voting control in the hands of those in the full-time active service of the corporation. To accomplish those purposes, the capital stock of the corporation was increased and changed into two classes,

preferred stock, and common stock without par value; the stock held by certain named stockholders in the full-time active service of the corporation was restricted and subjected to the right of the corporation to reacquire the same, and provision was made for the sale of 20,000 shares of (tenure) common stock to such persons active in the business in such amounts as the board of directors may determine, subject to the eventual compulsory surrender of such stock to the corporation.

Certain stockholders, including Mr. Stivers, not then in the full-time active service of the corporation, exchanged their common stock for new common stock in accordance with the provisions of subdivision C of article fourth of the plan and the certificate of incorporation, as amended, and such stock remained unrestricted, except to the extent provided in written agreements with the corporation relating to the right of the corporation to repurchase the same. Other stockholders then in the full-time active service of the corporation exchanged their shares of stock under the provisions of subdivision D of said article fourth for preferred and new common stock on the basis of one-half share of each for each share of old common stock.

The preferred stock so issued provided that the holder was entitled to certain dividends, had no voting rights, could be redeemed at any time and from time to time at the option of the company upon the payment of $25 per share and accrued dividends and was entitled on liquidation to $25 per share plus accumulated dividends. The new common stock issued under subdivision D of said article fourth provided that the holder thereof may not sell, transfer or encumber the same except to the corporation, that upon attaining the age of 65 years or on termination of full-time active service with the corporation such stock shall be surrendered for conversion into preferred stock or cash, to be determined on the basis of book value, or on liquidation of the corporation to be surrendered for its prorata share of distribution of corporate assets.

At the valuation date, March 31, 1953, there were outstanding 9,952 shares of common stock issued under subdivision C of article fourth of the certificate of incorporation as amended, and the same were held under agreements not to sell without first offering to sell the same to the corporation; 550 shares of common stock issued under subdivision C of said article fourth (Stivers' stock) which were held subject to the agreement of October, 1945; 550 shares of common stock issued under said subdivision C of article fourth and held subject to an agreement with the holder thereof similar to that in the Stivers case except that such holder's wife was not a party to the agreement; and 3,990 shares of common stock issued under subdivision D of said article fourth which, though restricted, nevertheless had been outstanding prior to the adoption of the tenure plan and the amendment of the certificate of incorporation and entitled the holders thereof to be paid on surrender to the corporation the book value thereof as determined by the board of directors. All such 15,042 shares of common stock admittedly are to be treated on a parity for the purpose of determining the book value of the Stivers stock. It is also conceded that for the purpose of valuing the Stivers stock the outstanding preferred stock is to be valued at $25 per share and the aggregate value of all outstanding preferred stock deducted from the net worth of the corporation. This in fact was done by the board of directors in arriving at the figure of $3,321,-783.46 as to the book value of all outstanding shares of common stock.

At the valuation date there were outstanding 32,000 shares of tenure common stock issued under subdivision E of said article fourth. The record shows that

those shares had been issued at $5 per share to persons active in the full-time service of the corporation and were subject to the following conditions: the holders thereof may not sell or transfer the same except to the corporation; upon reaching the age of 65 years, or earlier termination of his full-time active service with the corporation or upon his death, such shares are required to be surrendered to the corporation for conversion into preferred stock, or for cash, at a price to be determined on the basis of the length of time held, as follows: $5 per share plus $1 for each year held over five years up to fifteen years and after fifteen years at book value of the common stock, all as specified in a schedule set forth in the certificates of stock and certificate of incorporation, as amended; upon liquidation of the corporation the holder thereof is entitled to receive a prorata share of corporate assets but in no event more than the fixed dollar amount set forth in the schedule. The record discloses that the 32,000 shares of such tenure common stock at March 31, 1953, had been held only for an average of six years. No question exists that if the corporation were liquidated as of March 31, 1953, the holder of such tenure stock could receive only $6 per share.

The record further discloses that the sum of $3,321,783.46 was the total amount applicable to the common stock of the corporation. It was necessary, in determining the amount applicable to each share of common stock outstanding to take into consideration the contractual rights of the holders thereof. The holders of the tenure common stock were entitled, as of the valuation date, to only $6 per share in accordance with the provisions of the certificate of incorporation, as amended. In arriving at the valuation of the Stivers stock the board of directors could not disregard or ignore the limitation on the value of the tenure stock.

There is also proof in the record that dividends on the common stock were regularly paid during the years 1944 to 1952, inclusive, and that in 1953 dividends of $12 per share were paid.

There is no necessity here for a precise or all-inclusive definition of "book value". It is sufficient to point out that all parties agree that $3,321,783.46 is the book value of *all* of the outstanding common stock. In fixing the book value of each share of common stock it is necessary merely to give effect to the contractual rights of the different common stockholders. A determination of the per share book value on any other basis by the board of directors is inaccurate, and inequitable, and subject to review. (*Aron* v. *Gillman,* 309 N. Y. 157.)

The individual defendants are stockholders, officers and directors of the corporate defendant and the voting trustees under the voting trust agreement of June 1, 1947. In delivering the shares of common stock represented by the Stivers voting trust certificate the said defendants were in duty bound to obtain the book value therefor properly calculated.

The plaintiffs have made out a prima facie case. In arriving at this conclusion we have not considered the practice of the board of directors in fixing the book value of other shares of stock on prior occasions; or the effect of such practice in relation to this case; or any conduct on the part of Mr. Stivers during his lifetime which may require a different construction of the agreement all of which are matters of defense to be established by proper proof.

The judgment should be reversed and a new trial granted with costs to abide the event.

Peck, P. J., Breitel, Bastow and Bergan, JJ., concur in decision; Cox, J., dissents and votes to reverse in opinion.

Judgment affirmed, without costs.

