Roselie SHUMAKER, Plaintiff,

v.

UTEX EXPLORATION COMPANY, a corporation; Charles A. Steen; Mitchell Melich; Maxine S. Boyd; W. R. McCormick, Defendants.

No. C-210-56.

United States District Court
D. Utah,
Central Division.
Dec. 4, 1957.

Paul H. Ray and Grant C. Aadnesen (of Ray, Quinney & Nebeker), Salt Lake City, Utah, Henry Ruggeri, Price, Utah and Robert H. Ruggeri, Moab, Utah, for defendants.

CHRISTENSON, District Judge.

The phase of this suit now before the Court involves the interpretation and validity of a corporate bylaw designed to assure to a corporation the right to acquire the shares of any stockholder desiring to sell.

Plaintiff Roselie Shumaker is the owner of 48.29% of the capital stock of Utex Exploration Company[1], a Utah corporation. This corporation, defendant herein, is the operator of uranium claims comprising the discovery of Charles A. Steen, and he and the other individual defendants are officers and directors of the corporation.

In count one of her complaint plaintiff claims $2,000,000 in damages for alleged conspiracy among the defendants for the purpose of depriving her of her Utex stock and to prevent her from selling her stock to persons of her own choosing. In a second count, she asks for a declaratory judgment concerning the validity of a bylaw of the corporation purporting to limit the rights of stockholders to sell their stock. The defendants deny that there was any conspiracy, deny the commission of any overt acts, and affirmatively allege, in response to the second count of the complaint, that the bylaw restricting the sale of stock was regularly adopted and is valid and binding upon plaintiff, both as a corporate bylaw and as a contract among the stockholders who approved it, including plaintiff.

With the consent of counsel, the Court set the issues raised by the second claim of the complaint and defendants' answer thereto for trial in the first instance. Evidence has been received, and oral and written arguments considered. That claim is now before the Court for decision.

Clifford L. Ashton, Sterling D. Colton, and Donald E. Schwinn (of Van Cott, Bagley, Cornwall & McCarthy), Salt Lake City, Utah, for plaintiff.

1. Hereinafter referred to as "the corporation".

Section 4 of Article I of the corporation's bylaws upon which defendants rely and the validity of which plaintiff attacks, provides on matters pertinent here in substance as follows: Any holder of the capital stock of the corporation desirous of selling or transferring all or any part of his shares, shall give notice to the corporation of the number of shares to be sold and the name of another stockholder to act as appraiser. The president and treasurer of the corporation are thereupon to select another stockholder as appraiser. The two appraisers appointed by the parties are to select a third appraiser from among persons residing or doing business in the county in which the general administrative office of the corporation is located (Grand County, Utah). In the event the third appraiser is not selected by the other two within twenty days, either party may apply, upon notice, to a court of general jurisdiction in the county for his appointment. The value of the shares proposed to be sold as of the time of appraisal is to be determined by the majority of the appraisers, at which value the board of directors of the corporation has a twenty-day option to purchase them for the corporation, failing the exercise of which the stockholder may sell the said shares to any person without restriction.

Plaintiff's position is (I) that this bylaw is invalid on its face as an agreement to arbitrate future disputes not authorized by Section 78–31–1, Utah Code Annotated 1953[2]; (II) as an unreasonable restraint upon alienation; (III) that, assuming the bylaw valid, it has been waived by the corporation; (IV) that in any event, the corporation cannot lawfully purchase plaintiff's stock because it cannot come within the exception of subdivision (f), Section 16–2–16, Utah Code Annotated 1953[3] (added by Laws of Utah 1951, Ch. 23, § 2); (V) that the corporation does not have sufficient assets to purchase plaintiff's stock; (VI) that in view of the latter circumstances, and the unworkability and unfairness of the formula laid down in the bylaw equity should relax strict rules in order to do complete justice and that to require plaintiff to conform to the bylaw would be to require a vain or useless act; and (VII) that should the Court determine otherwise, it should retain jurisdiction until the plaintiff is afforded an opportunity to raise the question of the application of subdivision (f).

As a foundation for further discussion and findings to follow, the Court has determined:

1. Plaintiff at the commencement of this action was, and now is, a citizen of the State of Oklahoma; Utex Exploration Company, a corporation, and the individual defendants are residents of the State of Utah; the amount in controversy exceeds the sum of $3,000, exclusive of interest and costs.

2. Defendant corporation was organized under the Laws of the State of Utah in the year 1952. The principal amount of its authorized capital stock of $50,000 was paid in by the transfer to the corporation of twelve unpatented mining claims[4]. In addition, $7,500 appears to have been subscribed in cash.

2. "Two or more parties may agree in writing to submit to arbitration, in conformity to the provisions of this chapter, any controversy existing between them at the time of the agreement to submit. * * *"

3. "Purchase or redemption by company of own shares of stock—When allowable—Written agreement between company and shareholder.—A corporation may purchase or redeem one or more shares of any and all classes of its own capital stock in any of the following cases:

\* \* \* \* \*

"(f) In any case where the use of the funds or property of a corporation for such purchase or redemption would not cause the impairment of that portion of its assets acquired as consideration for its shares or that portion which has been treated as payment for shares allotted as stock dividends."

4. Claims connected with the MiVida discovery which was one of the main factors in launching the Utah-Colorado Plateau uranium mining and milling industry.

3. The articles of incorporation and bylaws of the corporation, the full texts of which are attached to plaintiff's complaint (except for certain amendments not material here) and incorporated herein by reference, and which contained the significant provisions referred to in this opinion, were duly and regularly adopted and approved by the stockholders during the month of October, 1952.

4. The provisions in the bylaw with respect to the acquisition of its stock by the corporation (Article I, Section 4) are not on their face unreasonable or oppressive. They deal with matters in which the corporation had a legitimate interest.

5. The plaintiff is the owner of 12,700 shares of the capital stock of the corporation, which makes her at present its largest single stockholder.

6. Unless the plaintiff complies with the terms of the bylaws, the defendant corporation will not recognize as a stockholder any person who may buy or attempt to buy her stock, or any part of it, unless on the basis of the particular circumstances of a proposed sale, and their opinion of the suitability of a prospective purchaser they decide to waive said bylaw. This possibility of defendants' consent does not furnish reasonable opportunity for the plaintiff to negotiate for the sale of her stock on the basis of its fair market value without reference to said bylaw. The plaintiff will be unable to reasonably and freely negotiate with other parties for the sale of her stock until, if at all, the non-application of said bylaw has been determined. She is desirous of selling a substantial part, or all, of her stock in the corporation but has not given the corporation written notice of such desire, nor has she nominated an appraiser or taken any other step required by said bylaw. She has not informed the defendants concerning the identity of any prospective purchaser or the particulars of any proposed sale.

7. On or about December 12, 1953, the corporation, with the consent and approval of its stockholders, purchased from one Dan O'Laurie and associated interests stock in said corporation then owned by sellers, paying a substantial cash payment down and executing a promissory note for the sum of $3,122,-500 for the balance of the purchase price payable on or before ten years from that date. The corporation agreed that as long as any portion of said obligation was outstanding it would not expend in excess of $250,000 in any one year in any activity or venture not related to mining or the development of the production of oil or gas. Said note is payable within the time indicated at the rate of 15% of the gross proceeds from the sale of uranium ore. As of June 30, 1957, $737,539.90 on said note remained unpaid, the greater portion of which amount still remains owing.

8. The gross income from ore extracted from the claims mentioned has amounted to millions of dollars, and there are remaining proved ore reserves the gross sales price of which upon removal is estimated by the corporation as approaching the same amount. In addition to proved ore reserves, the corporation owns stock in Uranium Reduction Company conservatively valued in excess of $3,700,000, and other substantial mining and oil prospects and properties and other substantial property of various kinds.

9. The stock of said corporation is closely held; it is not traded on the open market and its sale in the past has been made under special circumstances precluding a reflection of the actual market value of said stock. The plaintiff, as owner, testified that in her opinion her stock was worth $10,000,000. The defendants did not offer direct evidence as to the value of the stock but offered evidence tending to showing that, on the basis of proved ore reserves, the plaintiff's stock was worth substantially less than claimed by her. No expert testimony was submitted by any party. It does not appear that the evidence received took into consideration all of the factors materially affecting market value. Enough was shown, however, to indicate

that information could be made available to permit a determination of market value with reasonable accuracy. Apart from the unsatisfactory character of the evidence actually tendered, it is considered unnecessary and improper at this time for the Court to assume to find the value of plaintiff's stock because any such finding might tend unduly to influence a determination of such value in the first instance by the appraisal method provided in the bylaw.

10. Whether the purchase of plaintiff's stock or any part of it would cause the impairment of that portion of its assets acquired as consideration for its shares may depend both upon issues of law hereinafter discussed and upon unresolved factual questions concerning the amount of plaintiff's stock which may be offered for sale in the future and upon its valuation at the time, among other things.

## I

Under the Utah statute, an agreement to arbitrate a future dispute is invalid and unenforceable [5]. The bylaws of the corporation contain no such agreement for the arbitration of future disputes. Provisions for appraisement of values are distinguishable from agreements to arbitrate [6].

It may be that, as matters have developed, the primary controversy between the parties involves valuation. This development does not render the appraisal provision invalid since whether an agreement is one to arbitrate future disputes should depend upon its prospective operation at the time of the agreement and not upon whether in light of subsequent developments it later appears of vital import to the parties. The further suggestion of plaintiff that the limitations on the appointment of appraisers will permit abuse, or actually will invite the fixing of value through

arbitration rather than appraisal should not weigh at this stage. The Court cannot say that such provision renders abuse probable or unavoidable. The Court will not presume at this stage that those to be named will not act in good faith as appraisers.

## II

As early as Searles v Bar Harbor Banking & Trust Co., 1929, 128 Me. 34, 145 A. 391, 65 A.L.R. 1154, there is indicated the modern tendency of the courts to sustain reasonable restrictions imposed by a corporation upon the alienability of its stock. Such a restriction was permitted to be enforced in that case irrespective of the question of whether it was valid as a bylaw or not, on the ground that it constituted an agreement between the stockholders and the corporation. It was further held that public policy was not violated by a bylaw requiring any person acquiring his stock by will, inheritance or conveyance and desiring to sell it to give a thirty-day option to any person appointed by the directors to purchase said stock at a fair value determined by them or by appraisers to be chosen.

The annotation following the A.L.R. report of the foregoing case, 65 A.L.R. 1159, is on the subject, "Validity of restrictions by corporation on alienation or transfer of corporate stock." This annotation reflects the reluctance of the courts to give effect to restraints on alienation. Thus, it is stated (at page 1165) that a corporate bylaw which prohibits the alienation of the stock of the corporation is void, and that a bylaw requiring the consent of the directors to a transfer is not valid. However, more pertinent here than the rule on absolute restraints, the editors add (at page 1168):

"According to the weight of authority, a corporate bylaw prohibit-

---

5. Johnson v. Brinkerhoff, 89 Utah 530, 57 P.2d 1132; Latter v. Holsum Bread Co., 108 Utah 364, 160 P.2d 421.

6. 3 Am.Jur., Arbitration and Award, para. 3, p. 830; Thompson v. Newman, 36 Cal.

App. 248, 171 P. 982; Rives-Strong Bldg., Inc. v. Bank of America Nat. Trust & Savings Ass'n, 50 Cal.App.2d 810, 123 P.2d 942; see also annotation, 157 A.L.R. 1286 et seq.

ing the sale or transfer of the corporation's stock to an outsider, without first giving the other stockholders an option and opportunity to purchase the same, is valid and binding upon the stockholders."

In a supplemental annotation appearing in 138 A.L.R. 650, the foregoing conclusion is reiterated and further supported.

Reasonable restrictions on the sale of corporate stock are now generally approved. Another annotation in 117 A.L.R. 1359 deals with the remaining problem on this phase of the case, "Provisions of articles, bylaws, or agreement regarding future determination by parties other than owner of price at which corporate stock is to be taken over by corporation or stockholders upon specified event." The latter annotation indicates that as of its date most of the authority within its scope was inferential but that it may be stated as a general proposition (at page 1360) " * * * that the courts have tacitly assumed the validity of such restrictive bylaws or agreements if they would have sustained their validity independently of the circumstances that the price was to be determined in the future and by persons other than the owner." Subsequent decisions within the scope of this annotation as reported in A.L.R. Blue

Book of Supplemental Decisions, Vols. 1, 2, and their 1957 Supplement, uniformly sustain, and in fact strengthen, this conclusion.[7] The decided weight of authority and reason supports the validity of the bylaw under attack. An arrangement less favorable to the stockholder has been upheld especially in view of the recognition of such restrictions by the Uniform Stock Transfer Act.[8] Utah's statute based upon the Uniform Act[9] commends recognition of the general rule here.[10] I have concluded that the bylaws in question are not invalid as an unreasonable restraint on alienation, and on their face are not otherwise vulnerable to plaintiff's attack.

### III

Plaintiff says, in any event, that the restriction has been waived (a) by repeated sales or pledges to which the corporation has consented without insisting upon compliance with the bylaw; and (b) by entering into the O'Laurie agreement. The insurance cases cited by plaintiff on waiver have no application here. There is a difference between waiver of notice as applied to a particular claimant, and the attempted extension of such limited waiver so as to construct an abandonment of notice requirements in every other case in the future. The evidence here indicates that in each instance of prior sales or pledges of stock without

7. Oakland Scavenger Co. v. Gandi, 1942, 51 Cal.App.2d 69, 124 P.2d 143; Gibbon v. 3920 Lake Shore Drive Building Corporation, 1941, 310 Ill.App. 385, 34 N.E. 2d 109; Bohnsack v. Detroit Trust Co., 1940, 292 Mich. 167, 290 N.W. 367; Palmer v. Chamberlin, 5 Cir., 1951, 191 F.2d 532, 27 A.L.R.2d 416; Royal China, Inc. v. Regal China Corp., Sup.1951, 107 N.Y.S.2d 901, reversed 279 App.Div. 515, 110 N.Y.S.2d 718, upon reargument withdrawn and trial court affirmed as modified 280 App.Div. 921, 116 N.Y.S. 2d 926; Krebs v. McDonald's Executor, Ky.1953, 266 S.W.2d 87; First Nat. Bank of Montclair v. Coldwell, 1955, 286 App.Div. 1079, 145 N.Y.S.2d 674; In re Sherman's Will, 1956, 2 A.D.2d 662, 152 N.Y.S.2d 250; Coleman v. Kettering, Tex.Civ.App.1956, 289 S.W.2d 953.

8. See also Royal China, Inc. v. Regal China Corp., supra note 7; Coleman v. Kettering supra, note 7.

9. Utah Code Annotated 1953. "16-3-15. Limited lien of corporation on its shares. —There shall be no lien in favor of a corporation upon the shares represented by a certificate issued by such corporation and there shall be no restriction upon the transfer of shares so represented by virtue of any by-laws of such corporation, or otherwise, unless the right of the corporation to such lien or the restriction is stated upon the certificate."

10. The bylaw restrictions are printed upon all of the certificates of stock issued by the corporation.

compliance with the bylaw, such compliance was expressly waived by the corporation with the consent of the plaintiff in that particular case and in view of its special circumstances. There is no showing that the plaintiff or anyone else assumed that these specific waivers operated as a general waiver, and the indications are to the contrary; even after several of them had occurred, others were specially requested and granted. Nor did the O'Laurie agreement itself constitute a waiver. Purchase of stock in an amount within the $250,000 limit provided in the O'Laurie agreement is not thereby precluded, and there is nothing shown which would rule out O'Laurie's waiver of his agreement, if and when the question as to any excess expenditures might arise. Until, if at all, the corporation chooses to exercise its option upon compliance by plaintiff with the bylaw, no inconsistency between it and the contract arises. To this extent, the problem is akin to the ones hereafter discussed.

## IV

■ Plaintiff places major emphasis upon the contention that the corporation cannot lawfully purchase plaintiff's stock in that the purchase would impair its capital. Under English common-law [11] as adopted by Utah [12], a corporation could not purchase its own stock in the absence of express statutory or charter authority.[13] Section 16–2–16(f),

Utah Code Annotated 1953 is the only statutory authorization of possible application to this case. A purchase is thereby expressly authorized if the use of the funds or property of the corporation for the purpose would not cause the impairment of that portion of its assets acquired as consideration for its shares. It is plaintiff's position that to pay for the acquisition of plaintiff's stock at plaintiff's $10,000,000 valuation or any lesser valuation, necessarily would impair the present value of the assets acquired by the corporation in consideration of the issuance of stock (the twelve uranium claims originally valued for the purpose of stock issuance at $50,000, but which admittedly contain proved ore reserves valued in millions of dollars).

The portion of its assets that may not be impaired, says plaintiff, is the present value of said claims as such, rather than the value placed upon them for the purpose of issuing stock. Comments by Mr. Justice Wolfe in the opinions in Pace lend force to this contention. Plaintiff urges that the peculiar wording of subdivision (f) recognizes and incorporates his concept of "capital" which may not be impaired [14]; that it was Mr. Justice Wolfe's view that creditors were entitled to look to more than the mere value placed upon property for the purpose of issuing stock, and that the corporation should not be allowed to use fancied or real appreciation in the value

11. 6A Fletcher, Cyclopedia Corporations, § 2846, p. 360; Trevor v. Whitworth, 12 App.Cas. 409.

12. 68–3–1, Utah Code Annotated 1953.

13. Pace v. Pace Bros Co., 91 Utah 132, 59 P.2d 1, rehearing denied by opinion 91 Utah 149, 63 P.2d 590.

14. In the opinion on motion for rehearing, Justice Wolfe commented (63 P.2d at page 591):

"* * * Most property has a fairly wide margin for difference of opinion in value. It would be quite easy for a corporation to value its assets high and thus create a surplus and pay it out for one man's stock. When the creditors attempted to collect, they might have the onus of proving that many pieces of property were overvalued so as to show there was no surplus. If the actual property represented by paid-in capital should, on a boom market, rise above that measured by the corporation's stock liability, under such interpretation 'surplus' might be used to buy the corporation's stock. When the market receded, the 'capital' would be depleted and the treasury have in its place a batch of stock certificates. This would be rather hazardous for creditors. We think it was the intention of the Legislature to prohibit a corporation from paying out to stockholders any of its assets except profits in the form of dividends, or under such special circumstances as indicated in the opinion to be an exception. * * *"

·of said property in order to purchase its own stock.

Defendants say that, manifestly, Section 16-2-16(f) does create an exception to the rule of the Pace case and the English common-law because it expressly permits the purchase of its own stock by a corporation under the conditions specified in the statute, whereas the doctrine of the Pace case would not. They cite, among other cases, a Utah case [15] indicating that in the organization of a mining corporation where the capital stock is to be paid for in property, the statute does not require property to be valued at the actual cash value but only at its fair estimated cash market value and that such valuation is at the time of incorporation and not at some future time.

I am not convinced that plaintiff reads the Pace opinions correctly in their theoretical application to subdivision (f). To say that under no circumstances could dividends be paid out of an appreciation in the value of capital assets, even though declared and recorded as surplus, seems overly broad.[16] But, since the Pace decisions, a statute has been passed expressly authorizing the acquisition by the corporation of its own stock if such acquisition would not cause the impairment of that portion of its assets acquired as consideration for its shares.. Does this statute contemplate that when assets are taken in by the corporation in return for stock at an estimated or declared value, "the portion of the capital so acquired" necessarily would continue to be represented by the specific property taken in? Would it be determined by future fluctuations in the value of such property, or by the amount for which the property was originally received and upon the basis of which stock was issued?

Any other than the latter view appears blocked with difficulties. In this very case the assets taken in by the corporation and which now comprise the basis for plaintiff's claim that her stock is worth $10,000,000 rather than its par value of $12,700, is primarily the ore. Yet unless that ore can be removed from the ground and thus, as an asset of the corporation, milled and sold, her stock would be much less valuable. That value depends upon the declaration of dividends based upon the "dissipation" of "capital assets" under the view urged by plaintiff. On the other hand, if the twelve claims had become worthless so that they would represent no portion of the assets taken in as consideration for the stock, under plaintiff's theory could there be acquisition of its own stock without reference to an impairment of the $50,000 placed upon the claims in the first instance? If the actual value rather than the declared value of the claims constituted capital which could not be impaired by the payment of dividends or stock acquisitions, then large sums of money previously paid by the corporation in dividends from the ore withdrawn and marketed from these "assets", a substantial portion of which has been received by plaintiff, would have been illegal, as would the O'Laurie transaction whereby several million dollars have been paid out with plaintiff's approval.

 While it has appeared desirable to notice these questions, it is not necessary to rule upon them now. No matter which view the Court might take, the application of subdivision (f) still properly would not be before the Court. Any determination with respect to the matter would be merely conjectural without any indication that the problem would ever concretely arise.

It is true that plaintiff has said that she desires to sell her stock. She has, however, made no firm commitment which would be binding upon her either as to the sale of all of it, or any particular portion. The question of whether stock could be acquired by the

15. Tintic Indian Chief Min. & Mill. Co. v. Clyde, 79 Utah 337, 10 P.2d 932.

16. 13 Am.Jur., §§ 657-659, 661, p. 654 et seq.; 35 A.L.R.2d 1149.

corporation under subdivision (f) could arise only after it is determined what stock, and as of what time, and at what value, the corporation is going to attempt to acquire it, if at all. This phase of the case does not now constitute a substantial controversy admitting of specific relief through a decree of conclusive character [17]. Even though, as here, it is determined that some phases of a problem are ripe for declaratory relief, that does not mean that severable problems which are not justiciable must be, or can be, included in their determination [18]. A similar problem has already been presented to the Supreme Court of the State of Utah. It was indicated that since no showing was there made of any specific proposal for the corporation to purchase its stock, there had been nothing before the trial court to invoke a decision of whether any such purchase would impair the assets of the corporation in violation of the statute [19].

## V

Another point sought to be made by plaintiff is that, apart from the question of authority to buy under subdivision (f), the defendant corporation does not have sufficient liquid assets on hand to acquire plaintiff's stock. Again, this may depend upon the amount of stock to be acquired and as to conditions arising at the particular time an option to buy stock is attempted to be exercised. To say that defendant corporation cannot borrow for the purpose without making inroads into its capital contrary to subdivision (f) is not an answer. Prior to the time the issue arises, it is not beyond possibility that funds could be raised through liquidation, the selling of additional ore, or profits on other ventures. Whether that can be done must await the time, if any, when the question becomes pertinent. That time and those circumstances I cannot predict now. To attempt to base a declaration upon any such prediction again would be attempting to decide conjectural questions.

## VI

Plaintiff urges that by virtue of the circumstances as they have developed in this case, equity should relax the rules which otherwise might control in order that complete justice may be done between the parties. She points out that her own son dominates the controlling adverse interests; that there is no other stockholder whom she could appoint as an appraiser except herself or her daughter; that the opposing faction which would designate the other appraiser would be interested in securing her stock at the lowest possible price; that the third appraiser who would be designated by the first two, or by a court if they could not agree, has to be selected from among business men residing in Grand County where the controlling interests have dominant influence; that an objective appraisal would be difficult, and that unless the Court applies subdivision (f) at this time to preclude the operation of the bylaw, the plaintiff will have no real remedy.

The difficulty with plaintiff's position in this respect is that there is no relationship between the application of subdivision (f) of the statute and these apprehended dangers. What she, in effect, is asking is that

---

17. Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, rehearing denied 300 U.S. 687, 57 S.Ct. 667, 81 L.Ed. 889; Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826; St. Pierre v. United States, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199; Gray v. Defa, 103 Utah 339, 135 P.2d 251, 155 A.L.R. 495, appeal from second trial, 107 Utah 272, 153 P.2d 544.

18. United States v. Appalachian Electric Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243, rehearing denied 312 U.S. 712, 61 S.Ct. 548, 85 L.Ed. 1143, petition for construction of mandate denied 317 U.S. 594, 63 S.Ct. 67, 87 L.Ed. 487; Stone v. Christensen, D.C.D.Or.1940, 36 F.Supp. 739.

19. Summit Range & Livestock Co. v. Rees, 1 Utah 2d 195, 265 P.2d 381.

subdivision (f) be used as a subterfuge for precluding possibilities outside its scope or contemplation. The statute was designed primarily as a protection to creditors and not to preclude agreements between stockholders merely because they might involve other abuses. These other abuses, if any, must be reached by virtue of other rules of law. That the controlling interests of the corporation and one or more of the appraisers may abuse their responsibilities does not indicate that subdivision (f) does not apply, or that it does. It may indicate that other principles should be invoked for the protection of the plaintiff at the proper time. Without disputing that the determination of appraisers under some circumstances may be conclusive and beyond the power of any court, their power must be qualified by the conditions that they act in good faith and without fraud or unlawful conspiracy.

█ What already has been said goes a long way toward disposing of plaintiff's contention that to require her to follow the procedure laid down by the bylaws as a prerequisite to the sale of her stock would be to require a vain and futile act. There can be no quarrel with the general principle that equity is reasonable and does not require the performance of vain or futile acts[20]. Its application on the record here is another question. I believe it has no such application as plaintiff seeks to make.

Enough has been said also to indicate the view that it would be premature now to hold that subdivision (f) either does or does not bar a purchase of plaintiff's stock or some of it. It may not be supposed that such a holding bars her from practical relief to which she may be entitled otherwise. Indeed, without prejudice to her legitimate rights she is free to raise in the future the presently premature issues if she desires to do so.

## VII

█ Plaintiff has indicated that should the Court be of the view that proceedings under the bylaws are necessary to raise the question of the application of subdivision (f), she intends to so proceed; and she asks the Court to reserve jurisdiction in this case by taking the case under advisement until that can be done. I have concluded that there is neither justification nor necessity for such delay in a decision of the matter now before me. Under 28 U.S.C.A. § 2202 [21], even though it has limited application, the Court does have power upon subsequent petition in the same case to grant coercive or further declaratory relief in connection with a final declaratory judgment theretofore entered [22]. Moreover, if the proceedings in connection with the appraisal under the bylaw should have the effect of supporting or lighting up a conspiracy, if any, such as the one charged in the first claim of plaintiff's complaint, the entire matter may well be involved in the trial of that claim which already has been reserved for a future date.

█ The defendants have been insistent upon plaintiff's compliance with the bylaw, which they term a binding contract, if she wishes to sell her stock. It does appear from what has been said above that she is bound. Legal justice does not always comport, at least on the surface, with poetic justice. But where strict insistence upon the bond of an-

20. 30 C.J.S. Equity § 16, p. 336.

21. "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

22. Helene Curtis Industries, Inc. v. Sales Affiliates, Inc., D.C.S.D.N.Y.1952, 105 F.Supp. 886, affirmed 2 Cir., 199 F.2d 732; 6 Moore's Fed.Practice, para. 57.-10; Stephenson v. Equitable Life Assur. Soc. of the United States, 4 Cir., 1937, 92 F.2d 406; Automotive Equipment, Inc. v. Trico Products Corporation, D.C. W.D.N.Y.1935, 11 F.Supp. 292.

other visits upon one's self the consequences of his own insistence, neither poetic [23] nor prosaic justice (although blindfolded as to some things), will close her eyes to the fact that contracts should work both ways or not at all [24].

Defendants' contention has been that the bylaw does not contemplate arbitration but calls for an appraisal; plaintiff has expressed the fear that it provides for "arbitration", permitting capricious action which may be binding upon her. The fact that the Court cannot at this stage anticipate the action of the appraisers does not prevent it from exercising its jurisdiction by declaratory judgment to determine the scope and rules of the appraisement. This seems to follow just as much in the case of an appraisal under the bylaw involved here as it would with respect to an arbitration agreement.[25]

I am of the opinion, and so declare, that Section 4, Article I of said bylaws is not invalid on its face; that it was duly adopted, constitutes a contract binding upon the plaintiff, and has not been waived as to the plaintiff; that the determination of whether stock can be acquired by the corporation pursuant thereto within the authorization of subdivision (f) or within the resources of said corporation, must await the time the questions are more immediately invoked; that plaintiff may determine the value of all or any portion of her stock which she desires to sell, and may do so successively as to each block, if any, she desires to sell; that the appraiser to be designated by plaintiff and the appraiser designated by the company would not have the right to arbitrarily fix a value without reference to the true market value of the stock involved in the appraisal, either alone, or acting in combination with the other appraiser to be designated in accordance with the bylaw; that if the majority of the appraisers would join with either interest in attempting to fix a value arbitrarily or without reference to the true market value of the stock in question, there would be involved a violation of their duties as appraisers; that the bylaw viewed either as such or as a contract had no reference to any particular dispute and did not have as an objective the acquisition by the corporation of stock of any stockholder for less than its fair and full market value; and that the bylaw does provide and require that such appraisal be made not arbitrarily or capriciously but on the basis of such fair market value.

If further findings of fact or conclusions of law are deemed necessary [26] by any party, they may be proposed within ten days and will be settled upon notice, together with the form of judgment consistent with this opinion which defendants may submit within ten days.

---

23. "This bond doth give thee here no jot of blood; The words expressly are a pound of flesh." William Shakespeare, "The Merchant of Venice," Act IV, scene 1.

24. See A.L.I., Restatement, Contracts § 373.

25. See Lehigh Coal & Navigation Co. v. Central R. of New Jersey, D.C.E.D.Pa. 1940, 33 F.Supp. 362.

26. See Fed.Rules Civ.Proc. rule 52(a), 28 U.S.C.A., " * * * If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. * * "